Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

CAUSE NO. **C-2917-16-B**

| | | |
|---|---|---|
| JORGE GARCIA, Individually and on behalf of the Estate of ABRAHAM GARCIA, deceased, LUIS ROGELIO PUENTE MARTELL, Individually and on behalf of the Estate of LUIS ROGELIO PUENTE VILLELA, deceased, OLIVIA MIRIAM VILLELA ORTIZ, Individually, and DANIELLA BARAJAS Individually and on behalf of the Estate of AURELIANO BARAJAS, ANTONIO BARAJAS, Individually | § § § § § § § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | OF HIDALGO COUNTY, TEXAS |
| LYCOMING CORPORATION; CESSNA AIRCRAFT COMPANY; and MCCREERY AVIATION COMPANY INC. | § § § | |
| Defendants. | § § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

COME NOW, JORGE GARCIA, individually and on behalf of the Estate of ABRAHAM GARCIA, deceased, LUIS ROGELIO PUENTE MARTELL, Individually and on behalf of the Estate of LUIS ROGELIO PUENTE VILLELA, deceased, OLIVIA MIRIAM VILLELA ORTIZ, Individually, and DANIELLA BARAJAS, Individually and on behalf of the Estate of AURELIANO BARAJAS, ANTONIO BARAJAS, Individually ("Plaintiffs") and hereby state the following as their Original Petition against LYCOMING CORPORATION, CESSNA AIRCRAFT COMPANY, and MCCREERY AVIATION COMPANY INC. pursuant to the common law and the Texas Civil Practices & Remedies Code.

C-2917-16-E

Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

## DISCOVERY CONTROL PLAN

1.      Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiffs intend to proceed with discovery under Level 3 as set forth in Rule 190.4.

## PARTIES

2.      Plaintiff, Jorge Garcia, is the father of is an individual residing outside of the United States.

3.      Plaintiff, Luis Rogelio Puente Martell and Olivia Miriam Villela Ortiz are the parents of LUIS ROGELIO PUENTE VILLELA, deceased, and reside outside of the United States.

4.      Plaintiffs, Daniella Barajas and Antonio Barajas are siblings and the children of AURELIANO BARAJAS, and reside in Austin, Texas.

5.      Defendant, Lycoming Corporation (hereinafter "Lycoming"), is a Pennsylvania corporation doing business in the state of Texas and does not maintain a registered agent for service of process. Defendant, Lycoming Engines, is a foreign entity maintaining its principal place of business in Pennsylvania and may be served through the Texas Secretary of State at 652 Oliver Street, Williamsport, Pennsylvania 17701, pursuant to the Texas Civil Practice and Remedies Code § 17.044.

6.      Defendant, McCreery Aviation Company Inc. (hereinafter "McCreery"), is a corporation doing business in the state of Texas and can be served through its registered agent for service: Robert J. McCreery at 2400 South 10th Street, McAllen, Texas 78503-3144.

7.      Defendant, Cessna Aircraft Company (hereinafter "Cessna"), is a Kansas corporation headquartered in Providence, Rhode Island, and registered to do business in Texas. The Texas Secretary of State's Office lists Cessna's registered agent for service of process as CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

## ASSUMED AND COMMON NAMES

8.     Pursuant to Rule 28 of the Texas Rules of Civil Procedure, Plaintiffs hereby give Defendants notice that they are being sued in all of their business or common names regardless of whether such businesses are partnerships, unincorporated associations, individuals, entities, or private corporations.

## JURISDICTION OVER ALL DEFENDANTS IN THE STATE OF TEXAS

9.     It does not offend "traditional notions of fair play and substantial justice" to require any of the Defendants to defend themselves in this forum, since each of them designs, manufactures and/or performs services and/or supplies parts which will be incorporated into planes used in interstate and international commerce, including the State of Texas. Accordingly, the contacts, ties and relations of each of the defendants to the State of Texas are sufficient to give rise to the exercise of personal jurisdiction over them by courts in the State of Texas.

## SUBJECT MATTER JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court because the State of Texas is the resident state of a defendant who performed maintenance, supplied parts, or rendered services on the plane in issue within the State of Texas, which maintenance caused or contributed to cause the failure of the plane, engine and /or its component parts which took the lives of Abraham Garcia, Luis Rogelio Puente Villela and Aureliano Barajas.

11.     Furthermore, venue is proper in Hidalgo County, Texas under Texas Civil Practice and Remedies Code §15.002(a)(3) because it is the county of Defendant McCreery's principal office and said Defendant is not a natural person.

12.     Venue is also proper in Hidalgo County, Texas under Texas Civil Practice and Remedies

Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

Code §15.002(a)(1) because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

**FACTS GIVING RISE TO DEATH OF
ABRAHAM GARCIA, ROGELIO PUENTES AND AURELIANO BARAJAS**

13.     On or about July 9, 2015, after leaving the McAllen airport, the aircraft piloted by Abraham Garcia and co-piloted by Luis Rogelio Puente Villela, crashed in Matamoros, Mexico. Upon impact with the ground, it burst into flames, killing all three occupants.

14.     Upon information and belief, the airplane, engine, and/or its component parts were defective and unreasonably dangerous, causing the subject airplane to crash.

15.     As the surviving parent of Abraham Garcia, Plaintiff Jorge Garcia is qualified to bring suit for the wrongful death of Abraham Garcia pursuant to Tex. Civ. Prac. & Rem. Code § 71.004(a). Additionally, as the legal representative of the Estate of Abraham Garcia, Plaintiff Jorge Garcia is qualified to bring suit under the Texas Survival Statute. Tex. Civ. Prac. & Rem. Code § 71.021.

16.     As the surviving parents of Luis Rogelio Puente Villela, Plaintiffs Luis Rogelio Puente Martell and Olivia Miriam Villela Ortiz are qualified to bring suit for the wrongful death of Luis Rogelio Puente Villela pursuant to Tex. Civ. Prac. & Rem. Code § 71.004(a). Additionally, as the legal representative of the Estate of Luis Rogelio Puente Villela, Plaintiff Luis Rogelio Puente Martell is qualified to bring suit under the Texas Survival Statute. Tex. Civ. Prac. & Rem. Code § 71.021.

17.     As the surviving children of Aureliano Barajas, Plaintiffs Daniella Barajas and Antonio Barajas are qualified to bring suit for the wrongful death of Aureliano Barajas pursuant to Tex. Civ. Prac. & Rem. Code § 71.004(a). Additionally, as the legal representative of the Estate of

Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

Aureliano Barajas, Plaintiff Daniella Barajas is qualified to bring suit under the Texas Survival Statute. Tex. Civ. Prac. & Rem. Code § 71.021.

## IDENTIFICATION OF AIRCRAFT AND DEFECTIVE COMPONENTS

18.    The plane which caused the deaths of Abraham Garcia, Luis Rogelio Puente Villela and Aureliano Barajas is identified as a Cessna T206H Turbo Stationair.

19.    The plane and its component parts were manufactured and marketed by Cessna with a Lycoming engine. The model number for the engine is: TIO-540-AJ1A. The registration for the plane is: XB-MBC.   Based upon information and belief, McCreery performed maintenance or repairs to the aircraft in 2014 and through May of 2015.

20.    Plaintiffs reserve the right to re-plead, adding more Defendants, as more facts and information regarding this incident are discovered.

## COUNT 1:
### STRICT LIABILITY – DEFECTIVE DESIGN AND MANUFACTURE
### BY DEFENDANT CESSNA

21.    Plaintiffs hereby incorporate all prior allegations.

22.    Defendant Cessna designed, manufactured, assembled, supplied, distributed, and/or sold the aforementioned airplane and/or related component parts used therein in the course of its business.

23.    Cessna was also responsible for after-market support for the aircraft, the provision of technical manuals for the operation and maintenance of the aircraft.

24.    Cessna developed the specifications for the performance and reliability of the engine of the aircraft and selected the Lycoming Engine, Model Number TIO-540-AJ1A, as the power plant for the aircraft.

C-2917-16-B

Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

25.     At all material times, Cessna held a Type Certificate and Production Authority issued by the FAA for the airplane.

26.     Pursuant to its obligations as Type Certificate and Production Authority holder, Cessna was required to:

    a.      Establish and maintain a quality control system to ensure that each component supplied by an outside vendor or contractor is in a condition for safe operation;

    b.      Establish and maintain a quality control system to ensure that each part produced is in a condition for safe operation; and,

    c.      Establish and maintain a system for recording, investigating cause assuring corrective action on all known or reported failures, and defects in component or replacement parts.

27.     The aforesaid airplane and/or its related component parts used therein were then in a defective condition, unreasonably dangerous when put to their reasonably anticipated uses.

28.     The aforesaid airplane was used in a manner reasonably anticipated by this defendant and others.

## <u>COUNT 2:</u>
## STRICT LIABILITY – SALE, SUPPLY, AND DISTRIBUTION OF DEFECTIVE PLANES BY DEFENDANT CESSNA

29.     Plaintiffs hereby incorporate all prior allegations.

30.     Defendant Cessna designed, manufactured, assembled, supplied, imported, distributed, and/or sold the aforementioned airplane in the regular course of its business.

31.     The airplane at issue was, at that time, in a defective condition unreasonably dangerous when put to a reasonably anticipated use.

32.    The airplane at issue was used in a manner reasonably anticipated by this defendant and others.

33.    As a result of said use of the airplane, all three occupants of the airplane were killed, causing the damages described above.

## COUNT 3:
## NEGLIGENCE BY DEFENDANT CESSNA

34.    Plaintiffs incorporate all prior allegations.

35.    Defendant Cessna designed, manufactured, assembled, supplied, distributed, or sold the aforementioned airplane and/or related component parts, including the engine, in its course of business.

36.    Defendant Cessna held itself out as an entity which could carefully and competently design, manufacture, select materials for, design maintenance programs for, inspect, supply, distribute, and sell airplanes for use in interstate and international commerce.

37.    Defendant Cessna had the duty to use that degree of care that an ordinarily careful and prudent airplane designer, manufacturer, and seller of airplane and component parts would use under the same or similar circumstances.

38.    Cessna failed to use reasonable care and skill in the design, manufacture, marketing and distribution of the plane and/or its component parts including the selection of the Lycoming engine and failed to warn of defects inherent in the design or resulting from the manufacture of the Lycoming engine, component and replacement parts.

39.    Particulars of the negligence of Cessna including failure to warn including the following:

      a.    failing to use reasonable care and skill in the design, manufacture and testing of

Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

the Cessna aircraft;

b.    failing to use reasonable care and skill in the establishment of standards and specifications for the performance and reliability of the engine;

c.    failing to adequately test and monitor the reliability of the engines;

d.    failing to adequately investigate and inform operators of the aircraft of prior instances of engine malfunction and failure; and

e.    such further and other particulars as may be proven at trial of this action.

40.    Cessna failed to meet its duty to use reasonable care as described above with respect to the airplane flown by Abraham Garcia and Luis Rogelio Puente Villela on July 9, 2015 which resulted in the plane crashing, killing all of its occupants.

## COUNT 4:
## STRICT LIABILITY – DEFECTIVE DESIGN AND MANUFACTURE BY DEFENDANT LYCOMING

41.    Plaintiffs hereby incorporate all prior allegations.

42.    Defendant Lycoming designed, manufactured, assembled, supplied, distributed, and/or sold the aforementioned engine and/or related component parts used therein in the course of their business.

43.    The aforesaid engine and/or related component parts used therein were then in a defective condition, unreasonably dangerous when put to their reasonably anticipated uses.

44.    The aircraft was powered by a Lycoming Engine ("Engine"), Model Number TIO-540-AJ1A, which was designed, manufactured, marketed, and distributed by Lycoming.

45.    Lycoming designed, manufactured, marketed, and distributed the Engine.

46.    Lycoming was also responsible for after-market support for the Engine including the provision of technical maintenance and overhaul instructions to operators of the Engine

Electronically Filed
6/21/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

and overhaul facilities.

47.    Lycoming was also required to establish safe operating limits for the Engine and a safe service life for the Engine and each of its component parts. Further, Lycoming was required to publish specifications, manuals and instructions for retirement, replacement and/or refurbishment of the components of the engine to ensure the continuing airworthiness of each engine.

48.    The Engine failed due to defects in the design, manufacture, marketing and distribution of the engine.

49.    Lycoming failed to use reasonable care and skill in the design, manufacture, marketing and distribution of the Engine and failed to warn of defects inherent in the design or resulting from the manufacture of the Engine including its component and replacement parts.

50.    Particulars of the negligence of Lycoming, including failure to warn, presently known to the Plaintiffs include the following:

    a.    failing to use reasonable care and skill in the design, manufacture and testing of the Engine;

    b.    failing to adequately assess the reliability of the Engine and its suitability for use in a single engine, passenger carrying aircraft;

    c.    failing to adequately monitor the reliability of the engines in service;

    d.    failing to use reasonable care and skill in the establishment of standards and specifications for the repair, refurbishment and overhaul of the engine;

    e.    failing to establish adequate procedures for the periodic inspection, and replacement of the component parts of the engine;

C-2917-16-B

f.      failing to recall or to inform operators of engines to replace;

g.      failing to adequately investigate and inform operators of engines of prior instances of failure or malfunction;

h.      failing to report defects, failures and malfunctions of the engine to the FAA;

i.      failing to provide adequate instructions for the overhaul of engines so as to ensure the engines would be returned to service in an airworthy condition; and

j.      such further and other particulars as may be proven at the trial of this matter.

51.     In the alternative, Lycoming is strictly liable for design and manufacturing defects in the Engine.

52.     The aforesaid airplane was used in a manner reasonably anticipated by these defendants and others; however, as a result of said use, Plaintiffs suffered the damages detailed above.

## COUNT 5:
## STRICT LIABILITY – SALE, SUPPLY, AND DISTRIBUTION OF DEFECTIVE ENGINES BY LYCOMING

53.      Plaintiffs hereby incorporate all prior allegations.

54.     Defendant Lycoming designed, manufactured, assembled, supplied, imported, distributed, and/or sold the engine of the aforementioned airplane in the regular course of their business.

55.     The engine at issue was, at that time, in a defective condition unreasonably dangerous when put to a reasonably anticipated use.

56.     The engine at issue was used in a manner reasonably anticipated by these defendants and

Electronically Filed
6/27/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

others.

57.     As a result of said use of the Lycoming engine, all three occupants of the subject aircraft were killed, causing the damages described above.

## COUNT 6:
## NEGLIGENCE BY LYCOMING

58.     Plaintiffs incorporate all prior allegations.

59.     Defendant Lycoming designed, manufactured, assembled, supplied, distributed, or sold the aforementioned airplane and/or related component parts, including the engine, in its course of business.

60.     Defendant Lycoming held itself out as an entity which could carefully and competently design, manufacture, select materials for, design maintenance programs for, inspect,  supply, distribute, and sell airplanes for use in interstate and international commerce.

61.     Defendant Lycoming had the duty to use that degree of care that an ordinarily careful  and prudent airplane engine designer, manufacturer, seller, and distributor would  use under the same or similar circumstances.

62.     Defendant Lycoming failed to use reasonable care and skill in the design, manufacture, marketing and  distribution of the subject Engine including  failure to warn.

## COUNT 7:
## NEGLIGENCE BY MCCREERY

63.     Defendant,  McCreery,  designed,  manufactured,  assembled,  supplied,  distributed, maintained,  or sold the aforementioned airplane and/or related component parts, including the engine, in their course of business.

64.     Defendant, McCreery, held themselves out as an entity that could carefully and competently inspect and/or maintain the aircraft at issue in this suit.

65.     Defendant, McCreery, had the duty to use that degree of care that an ordinarily careful and prudent airplane maintainer and/or inspector would use under the same or similar circumstances.

66.     This degree of care includes but is not limited to abiding by Airworthiness Directives ("AD") and Mandatory Service Bulletins ("MSB") for the aircraft and component parts that McCreery services and maintains.   In 2002, Lycoming Engines released Mandatory Service Bulletin 550 and 552, which affected over 400 engines.   Over the four years following the release of MSB No. 552, five subsequent Mandatory Service Bulletins and five respective Airworthiness Directives were issued, with some of them superseding previous versions of an MSB, and others creating entirely new MSBs. The following is a list of these MSBs and ADs, complete with brief descriptions and timeframe of release of the Mandatory Service Bulletins and the respective Airworthiness Directives:

1- **September 16, 2002, Mandatory Service Bulletin Number 553**: Additional TIO-540 and LTIO-540 engines rated at 300 HP or higher and certain crankshafts are included, as well as IO-540 engines with aftermarket turbochargers installed. This MSB required the affected engines in this MSB to have material samples taken to evaluate if a crankshaft should be replaced or remain in service. These factory-authorized inspections were at no charge to the owner; in other words, covered under warranty. **AD 2002-19-03** is released.

2- **July 11, 2005, Mandatory Service Bulletin Number 566:** Several 540-Series engines at 300 HP or less were added, as well as some counterweighted 360-Series engines. This MSB required owner/operators to verify if their engine or crankshaft was within a set range of models and serial numbers. If within the range set forth by this MSB, owner/operators had to replace crankshafts. If not within the range set forth, a logbook entry had to be made stating it was not affected. Factory replacement of crankshafts were accomplished at no cost to the owner. Due to reports of 12 crankshaft failures in

Electronically Filed
6/29/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-2917-16-B

Lycoming 360 and 540 series engines rated at 300 HP or lower, **AD 2005-19-11** is released by the FAA.

3- **November 30, 2005, Supplement Number 1 to Service Bulletin 566:** Due to a confirmed failure in a Lycoming LO-360-A1H6, additional counterweighted 360-Series engines are added, as well as additional crankshafts as set forth by select serial numbers. As with the original MSB No. 566, this supplement required owner/operators to verify if their engine or crankshaft was within a set range of models and serial numbers. If within the range set forth by this MSB, owner/operators had to replace crankshafts. If not within the range set forth, a logbook entry had to be made stating it was not affected. Factory replacement of crankshafts were accomplished at no cost to the owner. **AD 2006-06-16** is released to incorporate the additional terms.

4- **February 21, 2006, Mandatory Service Bulletin Number 569:** As Lycoming Engines continued to investigate potentially affected models of engines and crankshafts, it was discovered that other models and crankshafts shared the same material flaws as those crankshafts addressed by earlier MSBs and ADs. For this reason, Lycoming Engines released MSB No. 569, officially starting the "crankshaft retirement program" for various engine models, including 390-, 540-, 580-, and 720-Series engines. The program called for the replacement, or retirement, of the crankshafts in the affected engines at first crankcase separation or next overhaul, whichever occurred first. A crankshaft kit was made available to owners of affected aircraft for $2,000 USD.

5- **April 11, 2006, Mandatory Service Bulletin Number 569A:** Additional engine models, serial numbers and crankshafts were added to the original MSB No. 569, the most notable of which were certain counterweighted 360-Series engines. MSB No. 569A retained the originally mandated time-of-compliance as first crankcase separation or next overhaul, whichever occurred first, but further added that the work must be completed no later than February 21, 2009. The crankshaft kit was still made available for $2,000 USD. The FAA investigated MSB Numbers 569 and 569A, and, after reviewing 23 confirmed cases of crankshaft failures, they instate **AD 2006-20-09** which mandates the retirement program under federal regulations. However, there is a key difference between the AD and the MSB, specifically in the required time of compliance (further discussed below).

6- **May 27th, 2009, Supplement Number 1 to Service Bulletin 569A:** After further review of MSB No. 569A, a relatively minor change is incorporated into the original MSB by correcting the start date (of manufacture) of affected engine models from March 1, 1997 to January 1, 1997. *(As of the date of this writing, AD 2006- 20-09 is still in effect with the original dates from MSB No. 569A, though in August of 2011, a proposal was made to amend the AD to incorporate the corrected starting date for affected engine models to January 1, 1997.)*

C-2917-16-B

Electronically Filed
6/27/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

67.    Defendant, McCreery, failed to meet their duties to use reasonable care as described above with respect to the airplane flown by Abraham Garcia and Rogelio Puente on July 9, 2015 which resulted in the plane crashing, killing all of its occupants.

<u>COUNT 8:</u>
**NEGLIGENT FAILURE TO USE ORDINARY CARE TO MAINTAIN, SERVICE, AND/OR INSPECT THE AIRPLANE BY DEFENDANT MCCREERY**

68.    All prior allegations are hereby incorporated by reference.

69.    Defendant, McCreery, was under a duty, pursuant to federal regulations and/or standards for reasonable care in the airplane maintenance industry, to use that degree and standard of care used by other reasonably prudent airplane maintenance persons/firms/companies in the airplane maintenance industry, under the same or similar circumstances.

70.    As mentioned above, there were ADs and MSBs that were in place for the engine in question which McCreery failed to initiate or abide by. The following is a list of these MSBs and ADs, complete with brief descriptions and timeframe of release of the Mandatory Service Bulletins and the respective Airworthiness Directives:

1-    **September 16, 2002, Mandatory Service Bulletin Number 553**: Additional TIO-540 and LTIO-540 engines  rated at 300 HP or higher and certain crankshafts are included, as well as IO-540 engines with aftermarket turbochargers installed. This MSB required the affected engines in this MSB to have material samples taken to evaluate if a crankshaft should  be replaced  or remain in service. These  factory-authorized inspections were at no charge to the owner; in other words, covered under warranty. **AD 2002-19-03** is released.

2-    **July 11, 2005, Mandatory Service Bulletin Number 566:** Several 540-Series engines at 300 HP or less were  added, as well as some counterweighted 360-Series engines. This MSB required owner/operators to verify  if their engine or crankshaft was within a set range of models and serial numbers. If within the range set forth by this MSB, owner/operators had to replace crankshafts. If not within the range set forth, a logbook entry had to be made stating it was not affected. Factory replacement of crankshafts

were accomplished at no cost to the owner. Due to reports of 12 crankshaft failures in Lycoming 360 and 540 series engines rated at 300 HP or lower, **AD 2005-19-11** is released by the FAA.

3- **November 30, 2005, Supplement Number 1 to Service Bulletin 566:** Due to a confirmed failure in a Lycoming LO-360-A1H6, additional counterweighted 360-Series engines are added, as well as additional crankshafts as set forth by select serial numbers. As with the original MSB No. 566, this supplement required owner/operators to verify if their engine or crankshaft was within a set range of models and serial numbers. If within the range set forth by this MSB, owner/operators had to replace crankshafts. If not within the range set forth, a logbook entry had to be made stating it was not affected. Factory replacement of crankshafts were accomplished at no cost to the owner. **AD 2006-06-16** is released to incorporate the additional terms.

4- **February 21, 2006, Mandatory Service Bulletin Number 569:** As Lycoming Engines continued to investigate potentially affected models of engines and crankshafts, it was discovered that other models and crankshafts shared the same material flaws as those crankshafts addressed by earlier MSBs and ADs. For this reason, Lycoming Engines released MSB No. 569, officially starting the "crankshaft retirement program" for various engine models, including 390-, 540-, 580-, and 720-Series engines. The program called for the replacement, or retirement, of the crankshafts in the affected engines at first crankcase separation or next overhaul, whichever occurred first. A crankshaft kit was made available to owners of affected aircraft for $2,000 USD.

5- **April 11, 2006, Mandatory Service Bulletin Number 569A:** Additional engine models, serial numbers and crankshafts were added to the original MSB No. 569, the most notable of which were certain counterweighted 360-Series engines. MSB No. 569A retained the originally mandated time-of-compliance as first crankcase separation or next overhaul, whichever occurred first, but further added that the work must be completed no later than February 21, 2009. The crankshaft kit was still made available for $2,000 USD. The FAA investigated MSB Numbers 569 and 569A, and, after reviewing 23 confirmed cases of crankshaft failures, they instate **AD 2006-20-09** which mandates the retirement program under federal regulations. However, there is a key difference between the AD and the MSB, specifically in the required time of compliance (further discussed below).

6- **May 27th, 2009, Supplement Number 1 to Service Bulletin 569A:** After further review of MSB No. 569A, a relatively minor change is incorporated into the original MSB by correcting the start date (of manufacture) of affected engine models from March 1, 1997 to January 1, 1997. *(As of the date of this writing, AD 2006-20-09 is still in effect with the original dates from MSB No. 569A, though in August of 2011, a proposal was made to amend the AD to incorporate the corrected starting date for affected engine models to January 1, 1997.)*

Electronically Filed
6/27/2018 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-2917-16-B**

71.     Defendant, McCreery, held themselves out as a maintenance firm which would carefully and competently repair, maintain, inspect, and overhaul, plus supply or maintain reasonably safe component parts for, the plane at issue, all in accordance with federal regulations and/or standards for reasonable care in the airplane maintenance industry, including but not limited to the ADs and MSBs above.

72.     Defendant, McCreery, breached said duty of care when it performed services (or failure to provide same) and/or supplied (or failed to be supplied) parts for the plane which took the lives of Abraham Garcia, Luis Rogelio Puente Villela and Aureliano Barajas.

73.     The services (or failure to provide same) and/or parts supplied (or failed to be supplied) by Defendant, McCreery, caused or contributed to cause the airplane crash which took the lives of Abraham Garcia, Luis Rogelio Puente Villela and Aureliano Barajas in one or more of the following negligent respects:

      (a)     providing or creating an improperly maintained and/or repaired and flawed engine and/or component parts thereof;

      (b)     failing to properly machine, retool, service, repair, overhaul, test, or replace the engine or parts thereof;

      (c)     failing to properly install or reinstall or assemble the engine or component parts thereof;

      (d)     failing to properly inspect, examine, and/or test any new and/or replacement parts, or its completed work or project,

      (e)     failing to abide by regulations, directives and service bulletins in place at the time services were rendered; and/or

Case 7:24-cv-00466    Document 17-1    Filed on 02/14/25 in TXSD    Page 17 of 21

C-2917-16-B

Electronically Filed
6/27/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

(f)    other acts or failures to act which are presently unknown but which shall become known through discovery in this case.

74.    Defendant, McCreery, knew or should have known of the potential that it had created a dangerous condition with respect to the airplane which took the lives of its occupants.

75.    As a result of Defendant's breach(es), Plaintiffs suffered the damages described above.

## COUNT 9:
## GROSS NEGLIGENCE BY ALL DEFENDANTS

76.    All prior allegations are hereby incorporated by reference.

77.    Defendants' failure to perform their services and/or supply parts for the plane created or allowed to remain in an unreasonably dangerous condition created by their actions and/or omissions constitutes gross negligence as that term is defined under Texas law. Defendants' acts and/or omissions, when viewed objectively from Defendants' standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Moreover, Defendants had actual subjective awareness of the unreasonably dangerous risk of injury and death posed by its activities, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of Abraham Garcia, Luis Rogelio Puente Villela, Aureliano Barajas, Plaintiffs, and others. Defendants' gross negligence was a proximate cause of Plaintiffs' injuries and damages.

## WRONGFUL DEATH DAMAGES

78.    As a direct and proximate result of the previously discussed negligent conduct of Defendants, Plaintiffs, Individually, have experienced damages under §71.004 of the Texas Civil Practice & Remedies Code, including, but not limited to, the following:

Electronically Filed
6/27/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

a.     Past mental anguish in the form of emotional pain, torment, and   suffering experienced only by one who has suffered the loss of their spouse or child;

b.     Future mental anguish in the form of emotional pain, torment, and suffering experienced only by one who has suffered the loss of their spouse or child;

c.     Past physical pain;

d.     Future physical pain;

e.     Past medical expenses;

f.     Future medical expenses;

g.     Funeral and burial expenses;

h.     Loss of Household Services; and

i.     Loss of inheritance and pecuniary loss.

## SURVIVAL DAMAGES

79.     As a direct and proximate result of the previously discussed negligent conduct of Defendants, Plaintiffs, Jorge Garcia, Luisa Rogelio Puente Martell, and Daniella Barajas as Representatives of the Estates of Abraham Garcia, Luis Rogelio Puente Villela, and Aureliano Barajas, respectively, bring claims for survival pursuant to Texas Civil Practice and Remedies Code §71.021, and pursuant to section 38 of the Texas Probate Code, suffered in each of the following ways and seek compensation for each of the following;

a.  Mental anguish;

b.  Pre-death fright;

c.  Fear of death;

d.  Pre-death pain, either emotionally and/or physically:

e.  Funeral and burial expenses;

C-2917-16-B

Electronically Filed
6/27/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

    f.   Physical and mental impairment;

    g.   Physical and mental pain and suffering; and

    h.   Death.

80.    Plaintiffs reserve the right to plead additional and more specific damages in the future as more facts become known.  Plaintiffs seek both past and future damages. Damages far exceed the minimum jurisdictional limits of this Court.

## DAMAGES CONSIDERED SEPARATELY

81.    Plaintiffs respectfully assert their request that they be allowed to have the elements of damages considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiffs for the injuries, losses and damages incurred, and to be incurred, and that each element of Plaintiffs' damages be considered separately and individually, segregating the past and future losses, so that pre-judgment interest due to Plaintiffs may be computed.

## CLAIMS FOR RELIEF AGAINST ALL DEFENDANTS

82.    All prior allegations are hereby incorporated by reference.

83.    Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiffs hereby state that they are seeking monetary relief over $1,000,000 from Defendants.

## PREJUDGMENT INTEREST

84.    Plaintiffs claim interest at the maximum legal rate on damages suffered as a result  of the Defendants' conduct.

## RULE 193.7 NOTICE

**PLAINTIFFS' ORIGINAL PETITION**

Case 7:24-cv-00466     Document 17-1     Filed on 02/14/25 in TXSD     Electronically Filed
6/27/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-2917-16-B**

85.     Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiffs hereby give actual notice to all Defendants that any and all documents produced may be used against the Defendant producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the documents.

## REQUESTS FOR DISCLOSURE

86.     Under Texas Rules of Civil Procedure 194, Plaintiffs request that Defendants disclose, within (50) days of service of the request, the information material described in Rule 194.2.

## REQUEST FOR JURY TRIAL

87.     Plaintiffs respectfully request a jury trial of all claims stated herein and have paid the appropriate fee.

## PRAYER

88.      Plaintiffs respectfully pray that they have and recover all judgment of and from the Defendants for the damages stated herein, with all costs of court, prejudgment interest at the maximum legal rate, post-judgment interest at the maximum legal rate, and all other relief, both general and specific, at law or in equity, to which Plaintiffs may show to be justly entitled.

Respectfully submitted,

*/s/ Jason C. Webster*
JASON C. WEBSTER
State Bar No. 24033318
HEIDI O. VICKNAIR
State Bar No. 24046557
OMAR CHAWDHARY
State Bar No. 24082807
DAVID A. SPRADLING
State Bar No. 24099976
RUSSELL SERAFIN, of Counsel
State Bar No. 18031500

Electronically Filed
6/27/2016 10:21:29 AM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

6200 Savoy Drive, Suite 150
Houston, Texas  77036
713.581.3900 (telephone)
713.581.3907 (facsimile)
filing@thewebsterlawfirm.com


Shiree D. Salinas
State Bar No. 17537000
Law Office of Shiree D. Salinas, PLLC
4900 North 10th Street
North Towne Centre
Suite A-4
McAllen, Texas 78504
Tel: (956) 631-9112
Fax: (956) 631-9114
ssalinas@ssalinaslaw.com

**ATTORNEYS FOR PLAINTIFFS**