**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **BROOK-HOLLOW CAPITAL, LLC** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **vs.** | § | **7:24-cv-466** |
| | § | |
| **GARCIA LAW GROUP, PLLC AND** | § | |
| **MARIA L. GARCIA,** | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF CAPACITY; MOTION TO
DISMISS FOR FORUM NON CONVENIENS; MOTION TO DISMISS FOR LACK OF
SUBJECT-MATTER JURISDICTION; MOTION TO DISMISS FOR FAILURE TO STATE A
CLAIM; ALTERNATIVE MOTION TO STAY ACTION OR ABSTAIN IN FAVOR OF
PENDING STATE ACTION; MEMORANDA IN SUPPORT OF EACH OF THE
FOREGOING, AND SUBJECT TO THE FOREGOING MOTIONS, VERIFIED ORIGINAL
ANSWER AND COUNTER-CLAIM**

COMES NOW, Defendants, the Garcia Law Group, PLLC, and Maria L. Garcia, and file

the following Motions and Memoranda in Support pursuant the Court's order allowing for re-filing

after the submission of the Mediator's Report:

(1)    Motion to Dismiss for Lack of Capacity;

(2)    Motion to Dismiss for Forum Non Conveniens;

(3)    Motion to Dismiss for Lack of Subject-Matter Jurisdiction pursuant to Federal Rule
        of Civil Procedure 12(b)(1).

(4)    Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil
        Procedure 12(b)(6).

(5)    Alternative Motion to Stay Action or Abstain in Favor of Pending State Action;

(6)    Subject to each of the foregoing Motions, Defendants' Verified Original Answer;

(7)    Subject to each of the foregoing Motions, Defendants' Counterclaim.

Defendants respectfully shows the Court as follows:

1

## I.    INTRODUCTION

1.    Plaintiff, Brook-Hollow, LLC, brings this action against Defendants, Garcia Law Group, PLLC, and Maria L. Garcia.

2.    Plaintiff sued Defendants for an alleged breach of contract on November 8, 2024.

3.    Plaintiff, however, fails to acknowledge the existence of a prior proceeding involving the same parties and the same underlying issues, filed on November 6, 2024—two days before this lawsuit. That proceeding, styled *Garcia, et al. v. Lycoming Engines, et al.*, Case No. C-2917-16-B, is pending in the 93rd Judicial District of Hidalgo County, Texas.

4.    By way of factual background, Brook-Hollow, LLC claims entitlement to reimbursement for Loan BH2017 and Loan BH2018 from Garcia Law Group, PLLC, and Maria L. Garcia. Specifically, Plaintiff contends it is entitled to the income derived from $1.3 million in attorneys' fees obtained in connection with a personal injury lawsuit in *Garcia, et al. v. Lycoming Engines, et al.* The underlying case, an airplane product liability matter, was fully litigated in the 93rd Judicial District of Hidalgo County, Texas, and has been pending since early 2023. The funds in question, derived from the attorneys' fees awarded in that litigation, were deposited into the court's registry and are currently scheduled for disbursement.

5.    **Of note, the state court sitting in Hidalgo County, Texas held a hearing on a Motion for Dominant Jurisdiction, Motion to Abate, and Motion to Quash. The state court granted the Garcia Law Group, PLLC's and Maria L. Garcia's Motion to Recognize Dominant Jurisdiction, and denied Brook-Hollow Capital, LLC's Motion to Abate. Through its rulings, the state court determined that it was the proper court for the determination of this dispute and has ordered the parties to participate in discovery and continue with the state court case.**

2

## II.
## MOTION TO DISMISS FOR LACK OF CAPACITY

6.      Brook-Hollow Capital, LLC in its Complaint state "BHC is a Delaware limited liability company and is registered as foreign limited liability company with its principal address located at 415 S. Florida Blanca, Pensacola, FL 32502."

7.      Defendants move to dismiss the lawsuit because Brook-Hollow Capital, LLC is not registered to do business in the State of Texas as either a foreign or domestic corporation and therefore does not have the capacity to maintain this lawsuit.

8.      Although Rule 12(b) does not specifically authorize a motion to dismiss based on lack of capacity to sue, "'[f]ederal courts. . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statutes, . . . such as motions raising . . . a lack of capacity to sue or be sued.'" *Spearwood Trust v. JPMorgan Chase Bank, National Association,* No. 12-CV-1074-FB, 2013 WL 12393978, * 2 (W.D. Tex. 2013) (*citing* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed. 2012)); *see also Formcrete, Co., Inc. v. NuRock Const., LLC,* No. 4:07cv290, 2007 WL 2746812, at *1 (E.D. Tex. Sept. 19, 2007) ("A challenge to a plaintiff's lack of capacity to sue, like the one brought by Defendants here, may be brought as a Rule 12(b)(6) motion."); *State of Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708, 712 (W.D. Tex. 1999) (addressing defendants' contention plaintiff lacked the capacity to sue as a 12(b)(6) motion).  In *Spearwood Trust v. JPMorgan Chase Bank, National Association*, the court granted the defendant's 12(b)(6) motion to dismiss because the plaintiff lacked capacity to sue. 2013 WL 12393978 at *2. The same result is compelled here.

9.      Pursuant to Federal Rule of Civil Procedure 17(b), a foreign corporation's capacity to bring or defend a diversity action in federal court is determined by state law. *Farris v. Sambo's Restaurants, Inc.,* 489 F. Supp. 143, 145 (N.D. Tex. 1980).  "In diversity cases, Rule 17(b) has

been effectively qualified to afford a foreign corporation relief in the federal court only if it has an enforceable remedy in the courts of the state in which the federal court is sitting." *Id.* at 146. "'While technically the corporation may have capacity to sue in the federal court pursuant to Rule 17(b) it cannot recover where recovery would not be possible in the state court. Any valid state law closing its courts to a foreign corporation which is not qualified to do business in the state must, therefore, be given effect in the federal courts of such state in a case based solely on diversity or alienage jurisdiction.'" *Id.* (*citing* 3A Moore's Federal Practice P 17.21 at 17-226 (2d ed. 1979)). The laws of the State of Texas prevent Brook-Hollow Capital, LLC from maintaining suit where it has not registered to do business in this State.

10.     Texas law is clear: "**A foreign filing entity** or the entity's legal representative **may not maintain an action, suit or proceeding in a court of this state**, brought either directly by the entity or in the form of a derivative action in the entity's name, on a cause of action that arises out of the transaction of business in this state **unless the foreign filing entity is registered in accordance with this chapter**." Tex. Bus. Org. Code Ann. §9.051(b) (emphasis added). Brook-Hollow Capital, LLC is not registered to do business in the State of Texas. As a result, it lacks capacity to sue, and its suit should therefore be dismissed in its entirety. *See, e.g., Spearwood Trust v. JPMorgan Chase Bank, National Association*, 2013 WL 12393978 at *2.

### III.
### MOTION TO DISMISS FOR FORUM NON CONVENIENS.

11.     The 93rd Judicial District of Hidalgo County, Texas, has jurisdiction over Plaintiff's claims and provides a more appropriate forum for resolving this dispute. Therefore, Defendants respectfully request that this Court dismiss Plaintiff's suit.

12.     Dismissal on the grounds of *forum non conveniens* is warranted when an adequate alternative forum exists and the balance of private and public interests favors dismissal. See *Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 261 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017).

13.    An adequate alternative forum is available because the 93rd Judicial District of Hidalgo County, Texas, provides a suitable venue for resolving the dispute, and Defendants are amenable to process in that jurisdiction. See *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077–78 (9th Cir. 2015); *Stroitelstvo Bulg. Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009); *Piper Aircraft*, 454 U.S. at 254 n.22; *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211–12 (5th Cir. 2010).

14.    The alternative forum is adequate because it ensures fair treatment and does not deprive the parties of remedies. See *Saqui*, 595 F.3d at 212–13; *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 421. Plaintiff will enjoy the same substantive rights and remedies in that forum as they would in this forum. Furthermore, the 93rd Judicial District is already presiding over related matters, ensuring judicial efficiency and consistency in adjudicating the issues at hand.

15.    In determining whether to dismiss a case under *forum non conveniens*, courts must weigh the balance of private and public interest factors. See *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448–49 (1994); *Gulf Oil*, 330 U.S. at 508–09; *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 878 (3d Cir. 2013).

16.    The private interests of the litigants will be better served by dismissing this case for the following reasons:

- The 93rd Judicial District of Hidalgo County, Texas, is already presiding over a pending state court matter that involves the same parties and the same underlying issues. Consolidating the disputes in that forum will promote judicial economy and avoid the risk of inconsistent rulings.

- The 93rd Judicial District of Hidalgo County, Texas, offers a more convenient forum for both the litigants and witnesses. See *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 877–78 (3d Cir. 2013); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145–46 (9th Cir. 2001); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Defendants have already engaged in litigation in that district, including filing motions and adhering to its procedural requirements, making it a familiar and efficient venue for resolution.

- Access to sources of proof will be significantly easier in the 93rd Judicial District of Hidalgo County, Texas. See *Gulf Oil*, 330 U.S. at 508; *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078 (9th Cir. 2015); *Kisano Trade & Invest Ltd.*, 737 F.3d at 877–78. The information regarding the attorneys' fees and Plaintiff's claims for reimbursement of Loan BH2017 and Loan BH2018 is centered within that district.

- A judgment rendered by the 93rd Judicial District of Hidalgo County, Texas, will be fully enforceable against all parties, ensuring comprehensive resolution of the dispute. See *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

- Practical considerations strongly favor litigating this case in the 93rd Judicial District of Hidalgo County, Texas, as it will result in greater efficiency and reduced costs. See *Gulf Oil*, 330 U.S. at 508. The underlying suit was initiated, fully litigated, and is currently pending in that forum. These proceedings are integrally connected to the instant dispute, making the 93rd Judicial District uniquely positioned to adjudicate the matter effectively. Furthermore, Plaintiff

cannot credibly claim prejudice from litigation in that forum, having expressly affirmed its interest in and reliance upon the proceedings in that jurisdiction.

17.    The public interest will be best served by dismissing this case for the following reasons:

- **Reduced Administrative Burden:** The administrative burden on the 93rd Judicial District of Hidalgo County, Texas, is significantly less than the burden this Court would bear. See *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). That court is already deeply familiar with the issues, facts, and parties involved, placing it in a superior position to efficiently and effectively handle this dispute. Its prior involvement reduces the need for duplicative proceedings, minimizing unnecessary strain on judicial resources.

- **Local Interest in Adjudicating the Dispute:** The 93rd Judicial District has a vested interest in adjudicating this controversy. See *Gulf Oil*, 330 U.S. at 508–09; *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 878–79 (3d Cir. 2013). Given its history of presiding over the underlying litigation, it is the proper forum to ensure that all issues arising from, related to, or referencing the prior proceedings are resolved comprehensively and consistently. This serves the public interest by ensuring that disputes connected to the forum's jurisdiction are handled locally.

- **Applicability of Texas State Law:** Texas state law governs the resolution of this case. See *Gulf Oil*, 330 U.S. at 508–09. The absence of federal statutes or federal legal issues further supports the appropriateness of state court adjudication. The state court is well-equipped to address the claims at hand and

is already managing the related litigation, eliminating the need to burden this Court with matters squarely within the jurisdiction and expertise of the 93rd Judicial District.

18.    In light of the fact that Plaintiff's claims can be fully and properly adjudicated in the 93rd Judicial District of Hidalgo County, Texas, and given that the private and public interests strongly favor resolution in that forum, this Court should grant Defendants' motion to dismiss on the grounds of *forum non conveniens*.

## IV.    MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND MEMORANDUM IN SUPPORT

19.    Defendants file this motion to dismiss plaintiff's suit for lack of subject-matter jurisdiction, as authorized by Federal Rule of Civil Procedure 12(b). The Court lacks subject-matter jurisdiction over plaintiff's suit; therefore, the suit should be dismissed.

20.    Further, the Court should decline to exercise jurisdiction pursuant to *Brillhart v. Excess Insurance Company of America,* 316 U.S. 491 (1942).

21.    The Declaratory Judgment Act, 298 U.S.C. § 22019(a), "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Wilton v. Seven Falls, Co.,* 515 U.S. 277, 287 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton,* 515 U.S. at 289. In *St. Paul Ins. Co. v. Trejo,* 39 F.3d 585 (5th Cir. 1994), the court identified seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated.
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant.

(3) whether the plaintiff engaged in forum shopping in bringing the suit.

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist.

(5) whether the federal court is a convenient forum for the parties and witnesses.

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

Each of those factors militate in favor of dismissal in the instant case.

22.    As indicated in Plaintiff's complaint, there is a lawsuit pending in state court, *Garcia, et al. v. Lycoming Engines, et al.,* No. C-2917-16-B, 93rd Judicial District, Hidalgo County, Texas, and that court is more than capable of handling the matters alleged in this suit.  It is well established in this circuit that, "[a] district court may decline to decide 'a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 495 (1942).

23.    There is absolutely no reason identified—because there is no legitimate reason that exists—as to why that court does not have the ability or capacity to decide the issues raised herein. Allowing both suits to proceed is the epitome of permitting duplicative litigation. *See id.* "The third *Brillhart* factor is the policy of avoidance of duplicative litigation….All of the issues presented by the declaratory judgment action could be resolved by the state court."). Indeed, to the contrary, it is apparent that the instant suit, filed after the state court lawsuit, is nothing more than a mere attempt to forum shop, and create confusion and distraction, when that lawsuit is already on file. The present suit was filed in federal court because the Plaintiff apparently perceived a

tactical advantage from litigating in a federal forum. There is no question that Plaintiff was aware of this pending litigation, and of its timing relative to the instant litigation, as detailed in the following communication from Defendants' counsel to Plaintiff's counsel:

**From:** Mark Carrigan
**Sent:** Tuesday, November 19, 2024 11:03 AM
**To:** 'Poncin, Michael S.' <mike.poncin@lawmoss.com>
**Cc:** Marion Reilly <marion@mrtrial.com>; John Martinez <john@mrtrial.com>
**Subject:** RE: 7:24-cv-00466 Brook-Hollow Capital, LLC v. Garcia Law Group, PLLC

Mr. Poncin,
Attached you will find a Petition in Interpleader and Declaratory Judgment Action which was filed by the Webster Law Firm on December 13, 2023.
I have also attached the Answer, Counterclaim and Crossclaim which GLG filed in response to the Webster Law Firm's Interpleader and Declaratory Judgment action.
Please note that The Webster Law Firm filed its Interpleader almost a year before your federal lawsuit was filed and GLG filed its Answer, Counterclaim and Cross-Action on November 6, 2024, BEFORE you filed the Complaint in federal court on behalf of your client.
Please dismiss your federal court complaint and make an appearance in the case that has been filed in the 93rd Judicial District Court of Hidalgo County, as an action concerning the same "res" has been pending in the state courts of Hidalgo County for almost a year.
As far as your inquiry concerning a waiver of service, will you accept service on behalf of Brook Hollow?
If so, I am sure we can reach an agreement on a date when all parties were served.
Let me know.
Mark

Nov. 19, 2024 Email from M. Carrigan to M. Poncin referencing earlier filed litigation.

24.     It further makes little sense in terms of judicial economy and convenience to have this Honorable Court decide the issues when the necessary parties have already appeared before another state court and that court can adequately address the issues. *See id.* ("Hence, permitting the present action to go forward would waste judicial resources in violation of the third *Brillhart* factor."). There is significant inequity to allow the instant case to proceed when the state case was on file first, the necessary parties are already before the court, and the issues could be readily resolved by the state court judge. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 195 (5th Cir. 1991)

(affirming the district court's dismissal of a declaratory judgment action when there was a state court action and the federal filing "strongly suggest[ed] forum shopping").

25.     Moreover, the Anti-Injunction Act precludes the Court from granting declaratory relief in this action. Before a court considers whether it should exercise its discretion to entertain an action for declaratory judgment, the court must first determine whether it even has the authority to grant the requested declaratory relief in the first instance. In this regard, Fifth Circuit law provides that "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti–Injunction Act." *Travelers Insurance Co*., 996 F.2d at 776 (*citing Texas Employers' Insurance Association v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988), cert. den., 490 U.S. 1035 (1989)).

26.     The Anti–Injunction Act [28 U.S.C. § 2283] provides "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 18 U.S.C. § 2283. "Section 2283 was enacted ... to avoid unseemly conflict between state and federal courts." *Signal Properties, Inc. v. Farha*, 482 F.2d 1136, 1137 (5th Cir. 1973). "This creates a national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Shore v. Saxbe*, 395 F. Supp. 1396, 1396 (E.D. Tenn. 1974) (*citing Younger v. Harris*, 401 U.S. 37, 41 (1971)). If the Anti–Injunction Act would bar an injunction, a declaratory judgment that would have the same effect is also barred. *See Texas Employers' Insurance Association*, 862 F.2d at 494*; see also Nationstar Mortgage, L.L.C. v. Knox*, 351 Fed. Appx. 844, 847 (5th Cir. 2009).

27.     "A federal declaratory judgment [could], of course, be res judicata of the state suit, thus resolving it as surely as an injunction, and in any event the declaratory judgment can itself be enforced by injunction under 28 U.S.C. § 2202 pursuant to the 'protect or effectuate' exception to section 2283." *Texas Employers' Insurance Association*, 862 F.2d at 505 (*citing Samuels v. Mackell*, 401 U.S. 66, 72 (1971)). "[E]ven if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Texas Employers' Insurance Association*, 862 F.2d at 505 (*citing Samuels*, 401 U.S. at 72). "[T]he issuance of a declaratory judgment in such situations would be antithetical to the noble principles of federalism and comity." *See Travelers Insurance Co.*, 996 F.2d at 776 (*citing Texas Employers' Insurance Association*, 862 F.2d at 505).

28.     "Thus, as a general rule, the district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti–Injunction Act." *See Travelers Insurance Co. v. Louisiana Farm Bureau Federation, Inc*., 996 F.2d 774, 776 (5th Cir. 1993) (*citing Texas Employers' Insurance Association v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988), cert. denied, 490 U.S. 1035 (1989); and *Samuels v. Mackell*, 401 U.S. 66, 73 (1971*)); see also Sherwin-Williams C*o., 343 F.3d at 388.

29.     There is no question that the state lawsuit was filed before the instant lawsuit was filed, but "there is no requirement that the state court action be pending *at the time the declaratory plaintiff filed its suit.*" *Penn-America Insurance Co. v. Haros, L.L.C.,* No. 1:22-CV-00706, 2023 WL 2997863, *9 (W.D. La. 2023). Nevertheless, in situations where, as here, there exist two separately filed lawsuits pending in different courts, the Fifth Circuit has recognized and applied

the first-filed rule. *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.,* 48 F.4th 603, 606 (5th Cir. 2022) (*citing West Gulf Maritime Assoc. v. ILA Deep Sea Local 24,* 751 F.2d 721, 730 (5th Cir. 1985), and *Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403 (5th Cir. 1971)). This "'first-to-file rule is grounded in principles of comity and sound judicial administration." *Pontchartrain Partners, L.L.C.,* 48 F.4th at 606 (*citing Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 602 n. 3 (5th Cir. 1983)).

30.    Second, the full scope of the state case involves, or will foreseeable involve, the same issues as to the existence of the contract and any alleged defenses that are before this Court, as well as other issues such as damages for fraud. Texas state law applies in this case as to the construction of contracts, and the legal duties, relationships and potential liabilities of the parties.

31.    Finally, if this Court were to decide the factual issues presented in this suit, it could become necessary to enjoin the state court from making conflicting findings and rulings on the remaining issues—if there were any—in order to protect and effectuate its judgment. Issuing a declaratory judgment in these circumstances would result in a judgment that effectively stays or enjoins state court proceedings, would interfere with the state court plaintiff's right to choose his forum, and would violate the principles of federalism and comity. Accordingly, this Court does not have authority to enter a declaratory judgment in this action. *Penn-America Insurance Co. v. Haros, L.L.C.,* 2023 WL 2997863 at *10.

## V. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

32.    Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a plaintiff must allege facts that, if true, state a plausible claim for relief. Mere legal conclusions or

conclusory statements unsupported by factual allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**A.    The Complaint Should be Dismissed in Its Entirety Based on the Expiration of the Statute of Limitations.**

33.    For the defense of limitations to be decided on a motion to dismiss, the bar of the statute of limitations must clearly appear from the face of the complaint and without a doubt or an exception; if any issues of fact are involved, the motion will be denied. *Cross v. Lucius*, 713 F.2d 153 (5th Cir. 1983). A complaint that shows relief to be barred by an affirmative defense, such as statute of limitations, may be dismissed for failure to state a cause of action. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982).  Motion to dismiss for failure to state a claim is an appropriate method of raising a statute of limitations defense. *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288 (5th Cir. 1977).

34.    Under Texas law, the statute of limitations for a breach of contract claim is four years from the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.004. A cause of action accrues, and the statute of limitations begins to run, when a party fails to perform a contractual obligation or when a default occurs. *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002).

35.    Plaintiff's claims are time-barred. According to the Complaint, the principal and interest for Loan BH2017 were due on February 28, 2020, with the default allegedly occurring on March 1, 2020. The four-year statute of limitations for claims related to this loan expired on March 1, 2024. Plaintiff's filing on November 8, 2024 is untimely.

36.    The Complaint alleges that Loan BH2018 went into default on May 1, 2019. The four-year statute of limitations for claims related to this loan expired on May 1, 2023. Plaintiff's filing on November 8, 2024 is untimely.

14

37.     Likewise, in Texas, a claim for guaranty liability is four years from the date that that the cause of action accrues. This means that a lawsuit must be filed within four years to recover a debt or other claim. The four-year statute of limitations for claims related to Loan BH2017 expired on March 1, 2024. The four-year statute of limitations for claims related to Loan BH2018 expired on May 1, 2023. Plaintiff's filing on November 8, 2024 is untimely.

38.     The Complaint alleges that Loan BH2018 went into default on May 1, 2019. The four-year statute of limitations for claims related to this loan expired on May 1, 2023. Plaintiff's filing on November 8, 2024 is untimely.

39.     Lastly, the statute of limitations for a specific performance is four years, meaning a lawsuit seeking specific performance of a contract must be filed within four years of the breach occurring. Plaintiff's suit is time-barred because the four-year statute of limitations for claims related to Loan BH2017 expired on March 1, 2024, and for claims related to Loan BH2018 expired on May 1, 2023.

40.     The Complaint does not allege any facts that would support the application of tolling or any other exception to the statute of limitations.

**B.     The Complaint Fails to State a Plausible Claim for Breach of Contract (Count I)**

41.     Plaintiff's breach of contract claim is based on alleged defaults under the Master Loan and Security Agreements ("MLSAs"). However, the Complaint fails to provide sufficient details regarding Defendants' alleged breaches, including specific dates, payment attempts, or circumstances surrounding the purported defaults.

42.     The claim is also deficient because Plaintiff has not demonstrated compliance with all conditions precedent under the MLSAs, including proper notice of default and acceleration of the loans. Without such allegations, Plaintiff's breach of contract claim cannot survive.

**C.    The Unjust Enrichment Claim is Barred by the Existence of Written Agreements (Count II)**

43.    Plaintiff's unjust enrichment claim must fail because the MLSAs govern the subject matter of the dispute. Texas law does not permit recovery under unjust enrichment when an express contract exists and controls the parties' relationship. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

44.    Plaintiff has expressly relied on the MLSAs in asserting its claims, precluding any alternative equitable recovery based on unjust enrichment. Accordingly, Plaintiff has failed to state a plausible claim for relief and this count must be dismissed.

**D.    The Guaranty Liability Claim Fails to Adequately Allege the Necessary Elements (Count III)**

45.    The Complaint does not sufficiently plead facts establishing the enforceability of the guarantees purportedly signed by Maria L. Garcia. Plaintiff has not provided the alleged guarantees as exhibits, nor has it demonstrated compliance with conditions precedent to enforcing them.

46.    The allegations regarding Maria L. Garcia's obligations under the guarantees are conclusory and unsupported by specific factual details.

**E.    The Specific Performance Claim Lacks Merit (Count IV)**

47.    Plaintiff seeks specific performance to obtain financial information under the MLSAs. However, the Complaint does not demonstrate that Plaintiff lacks an adequate remedy at law. Specific performance is an extraordinary remedy that is not available when monetary damages would suffice.

48.    Plaintiff has not alleged facts showing it has made a proper demand for the requested information or that Defendants have refused such a demand.

**F.     The Declaratory Judgment Claim is Redundant and Unnecessary (Count V)**

49.     Plaintiff's declaratory judgment claim seeks a determination of rights under the MLSAs, which are already the subject of Plaintiff's breach of contract claim. As such, the declaratory judgment claim is redundant and should be dismissed. *Am. Eagle Ins. Co. v.* Thompson, 85 F.3d 327, 333 (8th Cir. 1996).

**V.     ALTERNATIVE MOTION TO STAY ACTION OR ABSTAIN IN FAVOR OF PENDING STATE COURT ACTION**

*Colorado River Abstention is Appropriate.*

50.     Because this lawsuit is parallel with the state court case and the balance of factors, including blatant forum shopping, weigh in favor of abstention, pursuant to Rule 12(b)(1), Rule 12(c), and the Colorado River doctrine, this Court should dismiss this case in deference to the state case, or stay it until that case concludes.

51.     Although federal courts generally have an "unflagging" obligation to exercise their jurisdiction, "exceptional circumstances" afford discretion to stay or dismiss a case in favor of a parallel state proceeding. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "Governing principles" controlling Colorado River abstention "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id*. at 817 (internal quotation marks omitted). For instance, where the parallel state litigation disposes of "all or an essential part" of the federal suit, a stay is appropriate. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 10 n.11, 28 (1983) ("When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."). An abuse of discretion standard governs a district court's decision to stay. *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009).

17

52.    The Fifth Circuit uses a two-part analysis. First, a court must evaluate whether the state and federal proceedings are parallel, and if so, determine, on a case-by-case basis and utilizing several non-exclusive factors, whether "exceptional circumstances" justify abstention. *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 798 (5th Cir. 2014).

53.    Without a doubt, parallel actions include those involving "the same parties and the same issues." *Exxon Corp. v. St. Paul Fire & Marine Ins. Co*., 129 F.3d 781, 785 (5th Cir. 1997). Given that neither the Supreme Court nor the Fifth Circuit require "identical" parties and issues, "parallelism" does not require a mincing insistence on precise identity of parties and issues." *African Methodist Episcopal Church*, 756 F.3d at 797 (internal quotation mark omitted). "It is enough that the parties and issues be substantially the same." *Nationwide Prop. & Cas. Ins. Co. v. Buckley*, 642 F. Supp. 3d 544, 549 (S.D. Miss. 2022); *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp*., 851 F.3d 507, 520 (5th Cir. 2017) (courts "look both to the named parties and to the substance of the claims asserted to determine whether the state proceeding would be dispositive of a concurrent federal proceeding"); s*ee also Spectra Comm's Grp., LLC v. City of Cameron, Mo*., 806 F.3d 1113, 1121 (8th Cir. 2015) (analysis does not require that the matters are identical; instead, courts advance the policies underlying the doctrine by favoring the most complete action). "The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lonestar Airport Holdings, LLC v. City of Austin*, No. 1:22-CV-00770-RP, 2022 WL 16859731, at *4 (W.D. Tex. Nov. 4, 2022), report and recommendation adopted, No. 1:22-CV-770-RP, 2023 WL 8242477 (W.D. Tex. Jan. 11, 2023).

54.     The Garcia Law Group, Maria L. Garcia, and Brook-Hollow Capital, LLC are parties to both proceedings.[1] Similarly, although the state court case is more comprehensive, the issues are substantially similar in both cases. Both cases are premised on the same factual assertion, and indeed several of the same statements. Ultimately, they both require the court to consider the merits of the validity of the contract and any potential defenses to that contract, as well as the propriety of the conduct that resulted in those claims. The claims asserted in the state court case were broader than the claims asserted here, but all stem from the same nucleus of operative facts. The state law case inquires as to whether there was valid contracts between the Garcia Law Group, Maria L. Garcia, and Brook-Hollow Capital, LLC and whether the Garcia Law Group and Maria L. Garcia breached those agreements or whether they were voidable by virtue of fraudulent inducement by Brook-Hollow Capital, LLC. The issues are thus parallel. *See African Methodist Episcopal Church*, 756 F.3d at 798 (cases "sufficiently parallel" where the state proceeding would "dispose of all claims asserted" in the federal action); *Expedited Serv. Partners, LLC v. 1011 Ram Fairfield AMA, LLC*, No. 7:22-CV-00103-O, 2023 WL 3269697, at *1 (N.D. Tex. Mar. 27, 2023) (finding sufficient parallelism where "both proceedings revolved around nonpayment of work performed around the same time period."); *Wright v. Spindletop Films, L.L.C.*, 845 F. Supp. 2d 783, 788–89 (S.D. Tex. 2012) (finding parallelism based on same parties, where state case addressed two of the three remaining claims in the federal case, premised on the same facts); *Nationwide Prop. & Cas. Ins. Co. v. Buckley*, 642 F. Supp. 3d 544, 550–51 (S.D. Miss. 2022) (finding sufficient parallelism "to consider abstention in furtherance of comity and conservation

---

[1] Although Maria L. Garcia was not a party until later in the proceedings, she is currently a party and she was nevertheless in privity with the Garcia Law Group and her interests were equally at stake in both cases. For res judicata purposes, Maria L. Garcia is in privity with the Garcia Law Group and the parties are thus parallel. *See Kenner Acquisitions, LLC v. BellSouth Telecommunications, Inc.*, No. 06-3927, 2007 WL 625833, at *2 (E.D. La. Feb. 26, 2007) (finding parallelism, where one party in federal action was not present in the state case but was "in privity" with a party in the state case and would be bound by a decision in the state case based on res judicata).

of judicial resources," where the claims in both suits involved "substantially the same parties, the same nucleus of facts and the same contractual relationships"); *see also Canady v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y. 1985) *aff'd sub nom. Canady v. Valentin*, 768 F.2d 501 (2d Cir. 1985) ("Where the interests of the plaintiffs in each of the suits are congruent, Colorado River abstention may be appropriate notwithstanding the nonidentity of the parties."). The proceedings are parallel.

55. In evaluating the existence of exceptional circumstances justifying abstention, courts in the Fifth Circuit generally examine six non-exclusive factors: "(1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *African Methodist Episcopal Church*, 756 F.3d at 798. These factors are not applied as a "mechanical checklist," but instead, carefully balanced "as they apply in a given case." *Moses H. Cone*, 460 U.S. at 16; *African Methodist Episcopal Church*, 756 F.3d at 798. The Fifth Circuit has also recognized that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision." *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 105 (5th Cir. 1988) (*quoting Moses H. Cone*, 460 U.S. at 18 n.20); *G&G Closed Circuit Events, LLC v. 415 Trenton, L.L.C.*, No. 7:21-CV-00436, 2022 WL 209280, at *3 (S.D. Tex. Jan. 24, 2022*); see also Freed v. J.P. Morgan Chase Bank, N.A.,* 756 F.3d 1013, 1024 (7th Cir. 2014) (indication that federal claim was an attempt to evade the state court or recognition that the "claims and parties in the federal suit could have been included in the original state court proceeding" supported abstention). Likewise, although forum shopping alone does not justify abstention, it may be considered in deciding whether to apply the doctrine. *See Brasseaux v. Moncla Marine Operations L.L.C.*, No.

6:21-CV-00109, 2022 WL 1050895, at *5 (W.D. La. Mar. 22, 2022), report and recommendation adopted, No. CV 6:21-0109, 2022 WL 1051780 (W.D. La. Apr. 7, 2022) ("Judicial efficiency is not well served when litigants take their issues to state court, engage in lengthy motions practice, participate in hearings," and then reassert their claims in a federal forum"); *Walker Centrifuge Servs., L.L.C. v. D & D Power, L.L.C.*, 550 F. Supp. 2d 620, 624–25 (N.D. Tex. 2008) ("vexatious and reactive nature of the federal action strongly favors abstention"). Additional consideration of improper procedural gamesmanship may also be appropriate. *See Wright*, 845 F. Supp. 2d at 791 ("Court's biggest concern in exercising federal jurisdiction in this case is that it would validate Wright's avoidance of the requirements of federal removal statutes."). These factors weigh in favor of abstention.

- **Assumption of jurisdiction over a res:** With respect to the first factor, the 93rd Judicial District of Hidalgo County has exercised jurisdiction over a res. Namely, the court has already presided over the underlying dispute for well over a year, took funds at issue within the registry of the court, and will determine how those funds should be distributed.

- **Relative inconvenience of the fora:** With respect to the second factor, both cases are pending in this district and thus inconvenience does not weigh in favor of abstention. *Brasseaux,* 2022 WL 1050895, at *3; *see also Knox,* 351 F. App'x at 851 (affirming dismissal based on *Colorado River* abstention even though second factor was "not present").

- **Avoidance of piecemeal litigation:** "Because the policies underlying the Colorado River abstention doctrine are 'considerations of wise judicial administration,' courts have given the greatest weight to considerations of

avoiding piecemeal litigation in deciding whether abstention is appropriate." *Stonewater Adolescent Recovery Ctr. v. Lafayette Cnty., Miss.*, No. 3:19-CV-00231-GHD-RP, 2020 WL 1817302, at *4 (N.D. Miss. Apr. 9, 2020) (quoting Colorado River, 424 U.S. at 817, 819). Although avoidance of piecemeal litigation generally addresses the possibility of inconsistent rulings rather than duplicative litigation, "[i]f the state court action is able to resolve all of the claims involved in a dispute with respect to all of the parties involved while the federal court action is able to resolve the dispute only partially, this would weigh in favor of abstention." *African Methodist Episcopal Church*, 756 F.3d at 800 (*quoting Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 463 (5th Cir. 2012)); *see also Murphy*, 168 F.3d at 738 (duplicative prosecution that will result in res judicata provides "bar" to continued jurisdiction in the federal case). As the Seventh Circuit observed in a case cited by African Methodist Episcopal Church:

> In analyzing whether a dismissal or stay will further the interest in avoiding piecemeal litigation, we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. If the rule were otherwise, the Colorado River doctrine could be entirely avoided by the simple expedient of naming additional parties. While Colorado River is considerably more limited in scope than the doctrines of res judicata and collateral estoppel, like them its impact cannot be obliterated by the stroke of a pen.

*Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985) (citations omitted) (observing plaintiff's interest in one suit was the same as the interest of their company in the parallel suit); *see also Brasseaux,* 2022 WL 1050895, at *4 (weighing piecemeal factor in favor of abstention where plaintiff

"is seeking to have that which the Colorado River abstention doctrine precludes … to have the federal court resolve only some – but not all – of the claims he asserted"); *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.,* 953 F.3d 469, 478 (7th Cir. 2020) (affirming abstention, where no property was in issue, because "functionally identical suits in two places creates a high risk of inconsistent results and wasteful duplication"). As discussed above, the state case will fully resolve this case. Because the state case will fully resolve this one, the third factor weighs heavily in favor of abstention.

- **The order in which jurisdiction was obtained:** As detailed above, the state court case was filed first and is more advanced than the instant suit. The state court has been familiar with the facts of the underlying litigation where the $1.3m is at issue for over a year. That court has already deposited the funds at issue into the registry of the Court and will determine disbursement. This factor also weighs in favor of abstention.

- **Federal law has no role in the merits of either case:** The issues are state law based and do not turn on questions of federal law.

- **The adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction:** Because no question exists regarding the state court's ability to protect Brook-Hollow Capital, LLC's interests, this factor does not disfavor abstention. *African Methodist Episcopal Church*, 756 F.3d at 801.

- **The "Vexatious Reflexive Nature" of this Case:** These six factors are not exclusive. Instead, courts are instructed to consider the "vexatious and reflexive nature" of the federal suit, including forum shopping or similar procedural

games. *Moses H. Cone*, 460 U.S. at 17 n.20 (appellate court's reasoning that "vexatious or reflexive" nature of either case may influence the abstention decision has considerable merit."); *Brasseaux*, 2022 WL 1050895, * 5 (Plaintiff's actions constitute "forum shopping, and "vexatious reactive conduct that can influence" abstention decision); *Walker Centrifuge Servs., LLC,* 550 F. Supp. 2d at 628; *Wright,* 845 F. Supp. 2d at 791; *see also DePuy Synthes Sales, Inc.,* 953 F.3d at 480 ("[T]here was no need at all for parallel suits. The district court was rightly concerned about the strategy of staying in the state court until after it had ruled, and only then seeking a second bite at the apple in federal court."). These considerations tip the scale. Plaintiff could have joined in the state case when it was filed. Instead, it elected to file in federal court despite the presence of the ongoing litigation.

56.    The cases are parallel and exceptional circumstances warrant abstention and dismissal.

***Based on Its Inherent Authority to Control its Docket, the Court Should Stay this Case.***

57.    Although abstention pursuant to Colorado River is appropriate, the Court may rely on its inherent power articulated in *Landis v. N. Am. Co*., 299 U.S. 248 (1936) and simply stay the case.

58.    The "power to stay pending determination of a state action … is part of the court's inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *PPG Indus., Inc. v. Cont'l Oil Co.,* 478 F.2d 674, 682 (5th Cir. 1973) (*quoting Landis*, 299 U.S. at 254); *Clinton v. Jones,* 520 U.S. 681, 706 (1997) (Court possesses "broad discretion to stay proceedings as an incident to its power to control its

own docket."). "[A]n order merely staying the action 'does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (*quoting La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 29 (1959)). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis,* 299 U.S. at 254–55; *Second Amendment Found., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* No. 3:21-CV-0116-B, 2023 WL 4497266, at *1 (N.D. Tex. July 10, 2023) (in exercising their broad discretion to issue a stay, courts "must carefully consider the competing interests and exercise this power with moderation.") (*citing Landis,* 299 U.S. at 254–55, 257); *see also In re Ramu Corp.,* 903 F.2d 312, 318 (5th Cir. 1990) (stating that courts should avoid stays that are "immoderate or of an indefinite stay issued in a duration").

59.    A final judgment in the state case will foreclose the claim asserted here and this Court should apply the pragmatic approach and stay this case.

## VI. ORIGINAL VERIFIED ANSWER SUBJECT TO THE FOREGOING MOTIONS

60.    Defendants, the Garcia Law Group, PLLC and Maria L. Garcia, file this Original Answer to Plaintiff's Complaint.

### A.    Admissions & Denials

61.    Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 1.

62.    Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 2.

63.    Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 3.

64.     Defendants admit the allegations contained in paragraph 4.

65.     Defendants admit the allegations contained in paragraph 5.

66.     Defendants deny that venue is proper in the U.S. District Court for the Southern District of Texas.

67.     Defendants deny that this Court has subject matter jurisdiction over this action.

68.     Defendants lack sufficient knowledge or information to form a belief about the truth of paragraph 8.

69.     Defendants lack sufficient knowledge or information to form a belief about the truth of BHC's typical conduct, but deny that the loans allegedly at issue here required the monthly payment of interest invoice on a quarterly basis, deny that the principal balance was due at a date certain in the future, and deny that the loans were appropriately documented with a MLSA, personal guarantee, or other documentation.

70.     Defendants deny the allegations contained in paragraph 10.

71.     Defendants admit that Loan BH2017 called for principal and interest to be due on February 28, 2020 as alleged in paragraph 11. Defendants deny the remainder of the allegations in paragraph 11.

72.     Defendants admit that Loan BH2017 called for principal and interest to be due on February 28, 2020. Defendants deny the remainder of the allegations.

73.     Defendants deny the allegations contained in paragraph 12.

74.     Defendants deny the allegations contained in paragraph 13.

75.     Defendants deny the allegations contained in paragraph 14.

76.     Defendants deny the allegations contained in paragraph 15.

77.     Defendants deny the allegations contained in paragraph 16.

78.     Defendants deny the allegations contained in paragraph 17.

79.     Defendants deny the allegations contained in paragraph 18.

80.     Defendants deny the allegations contained in paragraph 19.

81.     Defendants deny the allegations contained in paragraph 20.

82.     Defendants deny the allegations contained in paragraph 21.

83.     Defendants deny the allegations contained in paragraph 22.

84.     Defendants deny the allegations contained in paragraph 23.

85.     Defendants deny the allegations contained in paragraph 24.

86.     Defendants deny the allegations contained in paragraph 25.

87.     Defendants deny the allegations contained in paragraph 26.

88.     Defendants deny the allegations contained in paragraph 27.

89.     Defendants deny the allegations contained in paragraph 28.

90.     Defendants deny the allegations contained in paragraph 29.

91.     Defendants deny the allegations contained in paragraph 30.

92.     Defendants deny the allegations contained in paragraph 31.

93.     Defendants deny the allegations contained in paragraph 32.

94.     Defendants deny the allegations contained in paragraph 33.

95.     Defendants deny the allegations contained in paragraph 34.

96.     Defendants deny the allegations contained in paragraph 35.

97.     Defendants deny the allegations contained in paragraph 36.

98.     Defendants deny the allegations contained in paragraph 37.

99.     Defendants deny the allegations contained in paragraph 38.

100.    Defendants deny the allegations contained in paragraph 39.

101.    Defendants deny the allegations contained in paragraph 40.

102.    Defendants deny the allegations contained in paragraph 41.

103.    Defendants deny the allegations contained in paragraph 42.

104.    Defendants deny the allegations contained in paragraph 43.

105.    Defendants deny the allegations contained in paragraph 44.

106.    Defendants deny the allegations contained in paragraph 45.

107.    Defendants deny the allegations contained in paragraph 46.

108.    Defendants deny the allegations contained in section (1) – (5) of the prayer for relief.

**B.    Defenses & Affirmative Defenses**

109.    Plaintiff's Complaint, in whole or in part, fails to state a cause of action.

110.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate their alleged damages.

111.    Plaintiff's claims are barred, in whole or in part, because conditions precedent to Plaintiff's recovery have not occurred.

112.    Plaintiff is estopped from suing on the contract.

113.    Plaintiff fraudulently induced Defendants to execute the contract. Brook-Hollow approached Defendants with a tax plan that Brook-Hollow assured would provide Defendants with a 20-year tax deferral on attorney's fees earned as well as provide Defendants with the ability to raise substantial capital at very low interest rates. Plaintiff's false representations which induced Defendants to enter into agreements to relinquish the attorney's fees it earned included, but were not limited to, the following: a. Plaintiff's tax plan was "foolproof"; b. The Internal Revenue Service (IRS) had approved the tax plan; c. Plaintiff had been utilizing the tax plan offered to

Defendants for years and never had a complaint or inquiry filed by the IRS; d. If the IRS ever made an inquiry to Plaintiff, Plaintiff would immediately advise its clients, like Defendants, of the inquiry; e. Defendants' attorney's fees would be invested in safe, reliable investments which would provide Defendants with substantial rewards when the funds were paid back. Defendants recently learned that Tate Johnson, President of Brook-Hollow Capital, LLC, was being investigated by the IRS for promoting "a deferred law firm fee scheme that appears to allow attorneys to unlawfully defer income for legal fees." Johnson had refused to comply with two IRS summonses issued to him personally in March 2024. Rather than freely provide the information to the IRS as one who was selling a legal tax deferral would do, it appears Tate Johnson is ducking the IRS and refusing to deal with them, all the while hiding this invaluable information about an IRS investigation from Brook-Hollow Capital, LLC's clients, like Defendants. The statements made in Section 5.2 by representatives of Brook-Hollow Capital, LLC were false when made. Representatives of Brook-Hollow Capital, LLC knew the statements were false when they made them, and the statements were made with the express purpose of trying to induce Defendants to pay earned attorney's fees to Brook-Hollow Capital, LLC. As a result of Brook-Hollow Capital, LLC fraudulent statements, Defendants suffered damages, not only as it relates to the loss of attorney's fees earned in this case, but damages beyond the attorney's fees.

114.    The contracts at issue are rendered unenforceable because of some failure to comply with the law. *Mabry v. Priester,* 338 S.W.2d 704 (1960). On October 3, 2024, the IRS filed a Petition to Enforce Internal Revenue Service Summonses against Brook-Hollow Capital, LLC, and indicated that that an investigation was pending to determine whether Brook-Hollow was "liable for penalties under 26 U.S.C. § 6700 in connection with law firm fee arrangements that they promoted, organized, and/or sold. Section 6700 of the Internal Revenue Code imposes

penalties for, among other things, organizing or promoting abusive tax shelters." The underlying agreements are unenforceable because of illegality by statute or public policy.

115.    The contracts are illegal because they are usurious.

116.    The statute of frauds bars enforcement of the action.

117.    Defendant is not liable to Plaintiff because:

- Plaintiff's claims are barred by the applicable statutes of limitation.

- No valid contract or relationship existed between the Plaintiff and Defendants.

- Plaintiff has waived its claims by its own actions and/or consented to Defendants' actions.

- Defendants' actions were justified.

- Plaintiff failed to mitigate damages.

**C.    Conditions Precedent**

118.    Plaintiff has not performed all conditions precedent that it was required to perform before filing suit.

**VII.**
**COUNTERCLAIM SUBJECT TO THE FOREGOING MOTIONS**

119.    The Garcia Law Group PLLC and Maria L. Garcia file the following counterclaim subject to the foregoing motions.

120.    The agreements mentioned in the Complaint was obtained from Defendants by Plaintiff by fraud and misrepresentation, as follows: Brook-Hollow Capital, LLC approached the Garcia Law Group PLLC with a tax plan that Brook-Hollow Capital, LLC assured the Garcia Law Group PLLC would provide it with a 20-year tax deferral on attorney's fees earned as well as provide the Garcia Law Group PLLC with the ability to raise substantial capital at very low interest rates.

121.    Brook-Hollow Capital, LLC false representations which induced the Garcia Law Group, PLLC and Maria L. Garcia to enter into agreements to relinquish the attorney's fees it earned included, but were not limited to, the following:

      a.     Brook-Hollow Capital, LLC's tax plan was "foolproof":

      b.     The Internal Revenue Service (IRS) had approved the tax plan:

      c.     Brook-Hollow Capital, LLC had been utilizing the tax plan offered to the Garcia Law Group, PLLC and Maria L. Garcia for years and never had a complaint or inquiry filed by the IRS.

      d.     If the IRS ever made an inquiry to Brook-Hollow Capital, LLC**,** Brook-Hollow Capital, LLC would immediately advise its clients, like the Garcia Law Group, PLLC and Maria L. Garcia of the inquiry.

      e.     The Garcia Law Group, PLLC's attorney's fees would be invested in safe, reliable investments which would provide the Garcia Law Group, PLLC with substantial rewards when the funds were paid back.

122.    The Garcia Law Group, PLLC recently learned that Tate Johnson, President of Brook-Hollow Capital, LLC, was being investigated by the IRS for promoting "a deferred law firm fee scheme that appears to allow attorneys to unlawfully defer income for legal fees."

123.    Johnson had refused to comply with two IRS summonses issued to him personally in March 2024.

124.    Rather than freely provide the information to the IRS as one who was selling a legal tax deferral would do, it appears Tate Johnson is ducking the IRS and refusing to deal with them, all the while hiding this invaluable information about an IRS investigation from Brook-Hollow Capital, LLC's clients, like The Garcia Law Group, PLLC.

125. The statements made in Section 5.2 by representatives of Brook-Hollow Capital, LLC were false when made.

126. Representatives of Brook-Hollow Capital, LLC knew the statements were false when they made them, and the statements were made with the express purpose of trying to induce the Garcia Law Group, PLLC and Maria L. Garcia to pay its earned attorney's fees to Brook-Hollow Capital, LLC.

127. As a result of Brook-Hollow Capital, LLC's fraudulent statements, the Garcia Law Group, PLLC and Maria L. Garcia have suffered damages, not only as it relates to the loss of attorney's fees earned in this case, but damages beyond the attorney's fees**.**

128. Further, since the fraudulent statements by Brook-Hollow Capital, LLC were made willfully, with full knowledge that they were false, the Garcia Law Group, PLLC and Maria L. Garcia seeks punitive damages in an amount that would deter Brook-Hollow Capital, LLC from acting in the same malicious and reckless manner in the future.

## VIII.
## PRAYER

129. For these reasons, Defendants ask the Court to do the following:

a. Render judgment that Plaintiff take nothing.

b. Dismiss Plaintiff's suit with prejudice.

c. Assess costs against Plaintiff.

d. Award Defendant attorneys' fees.

e. Award Defendant all other relief the Court deems appropriate.

Respectfully submitted,

**MARTINEZ REILLY, PLLC**

*/s/ Marion M. Reilly*
Marion M. Reilly
State Bar No. 24079195
Federal ID. 1357491
Email: Marion@mrtrial.com
John B. Martinez
State Bar No. 24010212
Federal ID. No. 23612
Email: John@mrtrial.com
Kyle A. Batson
Texas State Bar No. 24136732 Email: Kyle@mrtrial.com
Mark Carrigan – *Of Counsel*
*Texas State Bar No.* 03875200
3636 S. Alameda, Ste. B119
Corpus Christi, Texas 78412
Dir: (361) 273-6771
Fax: (361) 704-8355
**Service Email address: Service@mrtrial.com

   *and*

Carlos A. Garcia
State Bar No. 24048934
Southern District of Texas Bar No.: 589236
1305 East Griffin Parkway
Mission, Texas 78572
Tel. (956) 584-1448
Fax: (956) 584-7402
Email@thegarciafirm.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

   This is to certify that on Monday, June 16, 2025, a true and correct copy of the foregoing document has been served to all counsel of record via ECF notification in accordance with the FEDERAL RULES OF CIVIL PROCEDURE.

   */s/ Marion M. Reilly*
   Marion M. Reilly