**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **BROOK-HOLLOW CAPITAL, LLC** | § | |
| *Plaintiff*, | § | |
| | § | |
| **vs.** | § | **24-CV-00466** |
| | § | |
| **GARCIA LAW GROUP, PLLC AND** | § | |
| **MARIA L. GARCIA,** | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS OR STAY THE ACTION**

Plaintiff Brook-Hollow Capital, LLC ("**Plaintiff**" or "**BHC**") respectfully submits this response in opposition to the renewed Rule 12 motion[1] filed by Defendants Garcia Law Group, PLLC ("**GLG**") and Maria L. Garcia ("**Garcia**") (collectively, "**Defendants**") pursuant to this Court's Order dated April 17, 2025.[2]

## I.    INTRODUCTION

Lacking any colorable defense to BHC's lawsuit to collect sums due and owing under certain loans made to GLG and guaranteed by Garcia, Defendants' shotgun-style motion asserts four primary theories in support of dismissal – *i.e.*, lack of capacity to sue; forum non conveniens; lack of subject-matter jurisdiction; and failure to state a claim upon which relief may be granted. As explained below, however, each of these theories relies on deliberate misstatements of fact and controlling precedent. As such, none can be sustained, and Defendants' motion to dismiss should be denied in its entirety.

Defendants' alternative request that the Court stay this lawsuit pending resolution of an

---

[1] Doc. 38.

[2] *See* Doc. 34 (denying all pending motions without prejudice and granting leave to re-file same within seven days after entry of the mediator's Local Rule 16.4.K memorandum).

unrelated state-court matter is similarly meritless and should be denied. Indeed, despite Defendants' claim that the two actions are "parallel," Defendants only *recently* asserted claims against BHC in the state-court proceeding[3] in a race-to-the-court effort to subvert federal jurisdiction over the claims at bar. Defendants' accusation that BHC improperly "forum shopped"[4] the instant lawsuit is as hypocritical as it is baseless, given Defendants' own gamesmanship throughout this litigation.

In keeping with the kitchen-sink nature of their motion, Defendants also attempt to misdirect the Court by questioning the legality of an unrelated contingent legal fee deferral program offered by *separate entity and non-party* Kenmare Assignment Company ("**Kenmare**").[5] But neither Kenmare nor its legal fee deferral program are involved in this action, which is based solely on Defendants' failure to repay loans extended to them by BHC. Defendants' reference to Kenmare's legal fee deferral program is a red herring that has zero relevance to BHC's claims against Defendants, and it should be disregarded as such.

Simply put, BHC has stated plausible claims against GLG and Garcia based on their failure to repay funds owed pursuant to certain 2017 and 2018 loan agreements. Those claims are properly before this Court, which undisputedly has subject-matter jurisdiction over BHC's Complaint. Because Defendants' motion fails to raise any legitimate grounds for dismissal under Rule 12, or for abstention under the *Colorado River* doctrine and its progeny, Defendants' motion should be denied in its entirety.

---

[3] Notably, the state court matter was filed in 2016, before BHC and Defendants had even entered into the loan agreements at issue.

[4] *See, e.g.*, Doc. 38 at ¶ 23.

[5] BHC disputes Defendants' characterization of this program notwithstanding its total irrelevance to this lawsuit. Additionally, as discussed above, it is non-party *Kenmare's* deferral program. BHC acknowledges that this program was mistakenly referenced as "BHF's deferral program" in the previously-filed version of this opposition brief. (*See, e.g.*, Doc. 16 at p. 5.) To clarify, non-party Brook-Hollow Financial, LLC ("**BHF**") introduced the program to Defendants. However, BHF does not offer or administer the program itself.

## II.     BACKGROUND FACTS AND PROCEDURAL POSTURE

As relevant to this action, BHC is in the business of extending loans that require monthly payments of interest, generally invoiced on a quarterly basis. Each loan is documented by a Master Loan and Security Agreement ("MLSA"), personal guarantees, and other ancillary documents.

On November 8, 2024, BHC commenced this action by filing its Complaint.[6] (Doc. 1.) As noted in the pleadings and discussed in greater detail, below, BHC's claims arise from two separate loans requested by GLG via Garcia in February 2017 and December 2018, respectively. (Doc. 1-1, pp. 2, 15.)  As a result, Defendants and BHC entered into the subject loan agreements. (Compl. ¶¶ 10, 25.) Defendants eventually defaulted on both loans, which had been personally guaranteed by Garcia. (Doc. 1-1, pp. 29-36.) Presumably to reduce the amount of her personal liability for the debt,[7] on October 21, 2021, Garcia executed a "direction to pay" letter on behalf of GLG, in favor of BHC. (Compl. ¶ 24; Doc. 1-1, p. 38.) The letter assigned certain attorney fees due to GLG and/or Garcia in the 2016 state-court matter to BHC. (*Id.*) Per the letter, funds were to be remitted directly to BHC from attorney Jason Webster's IOLTA account. (*Id.*) Defendants later reneged on Garcia's direction-to-pay letter, necessitating this action to recover funds owed to BHC.

### A.     Loans to GLG and Guaranty by Garcia

As noted, GLG, via Garcia, entered into the subject MLSAs with BHC. Both MLSAs provided that the "Agreement and relationship of the parties is subject to, and is to be construed in accordance with the laws of the State of Illinois, regardless of the conflict of law rules of the state." (Doc. 1-1, pp. 10, 23.)

---

[6] BHC originally attempted to resolve its claims against Defendants by sending them various demands for payment and a draft version of the operative Complaint. Aware that a lawsuit was imminent (and refusing to pay their obligation to BHC voluntarily), Defendants took steps to evade service. Accordingly, after obtaining this Court's consent, BHC served Defendants via U.S. First Class Mail and Certified Mail on or about January 6, 2025. (Doc. 12.)

[7] It should be noted that GLG has independently made certain payments to reduce the firm's obligation to BHC.

OM 1965319.1

### 1.     February 22, 2017 MLSA and Loan Advance Request

The February 22, 2017 MLSA provides that GLG, as the borrower, may request "Loan Advances" (which GLG did request on February 22, 2017) in the amount of $2,000,000 at an interest rate of 15%. Under the terms of the controlling MLSA, payment was due February 28, 2020. When GLG failed to pay the debt, the result was an "event of default" as defined by the MLSA. Upon the occurrence of an event of default, the MLSA provides that BHC is entitled to demand payment, pursue collection activities, *etc.*, and further permits the recovery of BHC's attorney fees from Defendants. Garcia signed the 2017 MLSA, Loan Advance Request and Certificate of Authority.

### 2.     December 2018 MLSA and Loan Advance Request

Like the 2017 MLSA, the December 2018 MLSA provided that GLG could request Loan Advances from BHC, which GLG did in fact request. Specifically, GLG requested that BHC provide a loan advance to cover interest charges due to BHC in the amount of $1,224,651.97, plus an additional sum payable to GLG in the amount of $1,000,000. GLG subsequently defaulted under the terms of the 2018 MLSA when it failed to provide certain financial information (*i.e.*, tax returns) to BHC. Upon that event of default, BHC was entitled to demand payment, pursue collection activities, *etc.*, and to recover its attorney fees from Defendants. Again, Garcia signed the 2018 MLSA, Loan Advance Request and Certificate of Authority.

### 3.     October 28, 2021 "Direction to Pay" Letter

Following these events of default, on October 28, 2021, Garcia executed a letter assigning certain attorney fees due to GLG and/or Garcia to BHC, and directing Attorney Jason Webster to pay those funds to BHC from his firm's IOLTA account.[8]   Notwithstanding the signed loan

---

[8] Mr. Webster was counsel for the personal-injury plaintiffs in the 2016 state-court lawsuit that Defendants contend is "parallel" to this action. It is BHC's understanding that Mr. Webster and GLG had entered into a fee-

documents and personal guaranties, Defendants subsequently reneged on Garcia's direction-to-pay letter – instructing Mr. Webster *not* to remit the funds to BHC – thereby breaching *yet another* agreement to pay BHC for the money borrowed in 2017 and 2018.

### B. The State Court Lawsuit

On June 21, 2016, an Original Petition was filed in the Texas state-court action that Defendants argue is "parallel" to the case at bar (the "**State Court Lawsuit**"). (Poncin Decl. ¶ 2, Ex. A.)[9] The State Court Lawsuit was filed by four named plaintiffs, in their individual capacities and on behalf of three estates, following an aviation accident in which the pilot, co-pilot, and one passenger died. (*Id.*) The plaintiffs alleged that certain design defects in the plane had contributed to and caused the crash. **BHC had no involvement in – or even awareness of – the State Court Lawsuit from the time it was filed in 2016 until Defendants (purported to) add it to the action in late 2024.**

The personal injury claims underlying the State Court Lawsuit settled in November 2023, with the defendants and their insurers paying all settlement funds – including attorneys' fees – to plaintiffs' counsel, Webster Vicknair MacLeod ("**WVM**"). At some point thereafter, a dispute arose regarding the attorneys' fees portion of the settlement award. Specifically, upon information and belief, GLG disputed that its portion of the fees should be paid to non-party BHC contrary to Garcia's 2021 "direction to pay" letter.

As a result of the foregoing dispute, and unbeknownst to BHC, on December 13, 2023, WVM filed a petition in interpleader and declaratory judgment action in the same Hidalgo County court file that had resolved the personal injury claims (the "**Original Interpleader Action**").

---

splitting arrangement at the outset of that lawsuit. As such, GLG and/or Garcia would have been entitled to a certain portion of the attorney fees awarded upon settlement of the plaintiffs' claims in 2023, but for Garcia's direction that Mr. Webster pay such funds to BHC.

   [9] A copy of the Declaration of Michael S. Poncin was previously filed at Doc. 17.

(Poncin Decl. ¶ 3, Ex. B.)  The Original Interpleader Action related solely to the attorney fees awarded to WVM, which were owed to GLG pursuant to its fee-splitting arrangement with WVM, and whether such fees should be remitted to GLG or BHC pursuant to the direction-to-pay letter. **Crucially, though WVM named GLG and BHC as defendants in interpleader, BHC was never served with the Original Interpleader Action, and the state court's Register of Action is devoid of any evidence to the contrary.** (*Id.* ¶ 4, Ex. C.)

Almost one year later, on November 6, 2024, at 2:27 p.m., GLG finally responded to the Original Interpleader Action by filing a general denial to WVM's petition. (Poncin Decl. ¶ 5, Ex. D.)  Later that day, at 7:18 p.m., GLG filed a counterclaim and crossclaim. (*Id.*, ¶ 6, Ex. E.) GLG's counterclaim and crossclaim sought a declaration that the funds at issue belong to GLG and not to BHC, and further asserted that BHC had fraudulently induced Defendants – a law firm and an attorney – into executing the MLSAs by providing allegedly misleading statements about a legal fee deferral program that *BHC does not offer*.[10] Given the timing of GLG's crossclaim – *i.e.*, after it had received BHC's draft complaint for breach of the MLSAs but two days before BHC filed this action – it is clear that GLG merely raced to file a bogus claim in the interpleader action to avoid federal jurisdiction over BHC's efforts to collect the defaulted loans.  In any event, BHC was not served with GLG's crossclaim until January 30, 2025, making its response due February 24, 2025.

Meanwhile, on December 6, 2024, WVM filed an amended petition in interpleader (the "**Amended Interpleader Petition**"), asking the state court to determine that WVM's interest in

---

[10] To be clear: GLG's crossclaim completely omits the fact that it was non-party Kenmare, not BHC, that offered the deferral program under which Defendants claim to have been misled. Defendants' repeated attempts to conflate BHC with non-party Kenmare is a deliberate and improper misstatement of fact. Moreover, the facial disingenuousness of Defendants' fraud claim is evidenced by their own pre-litigation conduct, as both GLG and Garcia have acknowledged and made payments toward their obligation to BHC.

the attorneys' fees was superior to that of BHC and GLG. Upon service of the Amended Interpleader Petition on January 22, 2025, GLG *and Garcia* filed an amended counterclaim and crossclaim.[11] **There is no record of the amended counterclaim and crossclaim being served on BHC.**

GLG and Garcia have since served BHC *and BHF* with a Second Amended Counterclaim and Crossclaim, though they abruptly non-suited BHF when BHF removed that pleading to this Court. The parties are currently briefing issues related to the purported nonsuit and remand.

### 1.    The State Court Lawsuit is Not "Parallel" to this Action

In sum, the procedural history of the State Court Lawsuit since approximately November 2024 is riddled with Defendants' convoluted efforts to shoehorn BHC's claims for breach of contract into an unrelated dispute about the attorney fees WVM received from a 2016 personal injury matter and whether those fees should be paid to GLG, BHC, or WVM. But even if the state court determines that BHC is not entitled to *any* portion of those fees, such ruling would have zero relevance to the question of whether Defendants owe damages to BHC for their breaches of the 2017 and 2018 MLSAs. In fact, BHC expressly seeks damages that exceed the fees that are being held in the State Court Lawsuit. In other words, disposition of the State Court Lawsuit will *not* resolve BHC's claims against Defendants in this lawsuit. The actions are not related, and are certainly not "parallel" sufficient to justify abstention.

### 2.    Kenmare's Legal Fee Deferral Program is Not Relevant

As noted, Defendants' references to Kenmare's contingent legal fee deferral program, and summonses issued by the IRS concerning that program, are red herrings. The instant lawsuit is based solely upon loans extended by BHC to GLG and guaranteed by Garcia. While it is true that

---

[11] Prior to January 22, 2025, Garcia was not a party to the State Court Lawsuit (though the Amended Interpleader Petition referred to an undefined person/entity, "MLG," who is presumably Garcia).

BHF made introductions between contingent fee attorneys and Kenmare, BHF and Kenmare are legal entities separate from BHC, which issued the loans underlying this action. Neither Kenmare's legal fee deferral program, nor any IRS summonses related to that program, have any impact upon GLG's obligations to repay loans extended to it by BHC. Defendants' suggestions to the contrary are unsustainable.

## III.    LEGAL ANALYSIS

Lacking any one particularly strong argument, Defendants assert no fewer than four theories under which they believe this lawsuit should be dismissed: (1) lack of capacity to sue; (2) forum non conveniens, (3) lack of subject-matter jurisdiction, and (4) failure to state a claim upon which relief can be granted. Each of these theories is discussed and debunked, below.

### A.    BHC Does Not Lack Capacity to Maintain this Action

Citing Tex. Bus. Org. Code § 9.051(b), Defendants correctly note that a foreign filing entity cannot maintain an action in Texas on a "cause of action that arises out of the transaction of business in" in Texas.  (Doc. 33 at pp 3-4.)  While emphasizing the language most favorable to their argument, Defendants fail to acknowledge that neither the underlying loan transactions, nor this lawsuit, constitute the "transaction of business" in the State of Texas.

In fact, Tex. Bus. Org. Code § 9.251, expressly provides that these activities do *not* constitute the "transaction of business" in Texas:

For purposes of this chapter, activities that do *not* constitute transaction of business in this state include:

(1)  maintaining or defending an action or suit or an administrative or arbitration proceeding, or effecting the settlement of:

(A)  such an action, suit, or proceeding; or

(B)  a claim or dispute to which the entity is a party

*******

(8)  securing or collecting a debt due the entity or enforcing a right in property that

8

secures a debt due the entity;

(9) transacting business in interstate commerce;

(citation omitted) (emphasis added.)

Thus, it is clear that neither BHC's attempt to collect a debt owed by Defendants, nor its filing of this lawsuit, falls under the umbrella of "transacting business" as defined by Texas law. It is also worth noting that because BHC is neither a citizen nor resident of Texas, its issuance of the loans to Defendants is not intrastate commerce; rather it is *interstate* commerce.

Further, even if Defendants were correct that BHC lacks capacity (they are not), such defect would not be fatal to BHC's claims. Under Texas law, a plaintiff's right to bring suit in the capacity in which he sues is properly raised by a plea in abatement, or it is waived. *Continental Contractors, Inc. v. Thorup*, 578 S.W.2d 864, 866 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ). A motion to dismiss should not be granted until the cause of action has been abated, **the plaintiff has been given an opportunity to cure the defect**, and has failed to do so. *See Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

Here, Defendants opted to file a motion to dismiss, not a motion to abate (or stay).[12] Texas courts have held that arguing lack of capacity in an answer, plea to the jurisdiction, motion for summary judgment, or motion to dismiss does not properly raise the issue. *See, e.g., Haddox v. Fed. Nat'l Mortgage Ass'n*, No. 03-15-00350-CV, 2016 WL 2659695, at *4 (Tex. App.-Austin May 6, 2016, pet. Dism'd) (mem. op.) (answer, plea to jurisdiction, motion to dismiss); *Cognata v. Down Hole Injection, Inc.,* 375 S.W.3d 370, 376 (Tex. App.-Houston [14th Dist.] 2012). (motion to dismiss); *Lighthouse Church of Cloverleaf v. Tex. Ban*k, 889 S.W.2d 595, 600 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (summary-judgment motion); *Cont'l Contractors, Inc. v.*

---

[12] Defendants request a stay only as it relates to their argument that the state court matter should be heard first.

*Thorup*, 578 S.W.2d 864, 866578 S.W.2d at 866 (motion for dismissal). To that end, Defendants have arguably waived their argument that BHC lacks capacity.

Finally, even if BHC lacked capacity and Defendants did not waive their argument as to the same, the remedy employed by Texas courts is to stay the action until the plaintiff has cured the capacity defect, and Defendants have cited no cases in which a court instead dismissed claims with prejudice. *See Hunt v. City of Diboll*, 574 S.W.3d 406, 435 (Tex. App.-Tyler 2017) ("This rule favors abatement over dismissal because abatement affords corporations an opportunity to cure the defect.")

Accordingly, even if BHC did *not* have capacity to sue (which it plainly does), the remedy would be to allow BHC to cure the purported defect, not to dismiss the action entirely.

### B.    Defendants' Forum Non Conveniens Argument Lacks Merit

Defendants have repeatedly suggested that because the "same underlying issues" are involved in this matter and the State Court Lawsuit, the state court is a more convenient forum for resolution of both matters. However, as discussed at length above, the State Court Lawsuit originated as a wholly unrelated personal-injury matter in 2016 – *i.e.*, *before BHC and Defendants entered into either of the subject loan agreements*. In its current iteration, the State Court Lawsuit solely concerns WVM's interpleader claims and the issue of who is entitled to receive certain attorney fees awarded in connection with the personal-injury matter. As such, the outcome of the State Court Action has no bearing whatsoever on BHC's claims under the 2017 and 2018 MLSAs breached by Defendants. There is no reason – other than Defendants' clear desire for a "hometown" advantage – that the state court is a more appropriate or convenient forum in which to resolve BHC's contract claims. Accordingly, Defendants have not adequately supported their claim for dismissal of this lawsuit under the doctrine of forum non conveniens.

### C.     This Court Does Not Lack Subject Matter Jurisdiction over BHC's Complaint

Defendants' purported subject-matter jurisdiction defense is simply an extension of their meritless forum non conveniens argument. As set forth above, BHC tried to collect amounts owed by Defendants prior to filing this lawsuit. After learning that BHC was prepared to file suit in November 2024, Defendants "raced to the courthouse" to add BHC to a lawsuit that had been pending since 2016 – a year before BHC and Defendants first entered into any contract. (And then failed to properly serve BHC with GLG's purported crossclaim in said lawsuit.) Indeed, naming BHC in a state court lawsuit that was filed before the subject contracts were even *signed* is tantamount to bad faith litigation.

Defendants further argue that the Court could not enter a declaratory judgment in this lawsuit without violating the Anti-Injunction Act. Again, Defendants' entire argument is premised on the misleading and false assertions that this lawsuit, filed in November 2024 based upon contracts executed in 2017 and 2018, somehow concerns with the same issues as a 2016 personal-injury lawsuit that subsequently devolved into an interpleader action about who is entitled to certain attorney fees. Clearly, there is no similarity and no conflict between the State Court Lawsuit and the present matter.

Defendants' "first-to-file" argument suffers from the same logical defects and should be disregarded. Moreover, accepting Defendants' premise – essentially, that it can strip this Court of subject-matter jurisdiction simply by adding pretextual claims against BHC in a pre-existing state-court lawsuit – would only encourage litigants seeking a home-court advantage to engage in improper forum-shopping and outright gamesmanship. Defendants' suggestion that this Court lacks subject-matter jurisdiction over BHC's Complaint based on the existence of the (separate and unrelated) State Court Lawsuit is facially absurd. Their motion should be denied.

OM 1965319.1

D.    **BHC's Complaint States a Valid Claim Against Defendants**

Finally, Defendants contend that BHC's Complaint fails to state a valid claim for relief. Each of Defendants' six purported arguments under Rule 12(b)(6) fails for the reasons set forth, below.

1.    **BHC's claims are not time-barred**

Defendants argue that BHC's claims are barred by the four-year statute of limitations applicable to claims for breach of contract under Texas law. However, as per the loan agreements signed by Defendants, each such "Agreement and relationship of the parties is subject to, and is to be construed in accordance with the laws of the State of *Illinois*, regardless of the conflict of law rules of the state." (emphasis added).

Unlike Texas, Illinois law provides for a ten-year statute of limitations following the breach of a written contract, including personal guaranties. *See* 735 ILCS 5/13-206 ("[A]ctions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing and actions brought under the Illinois Wage Payment and Collection Act shall be commenced within 10 years next after the cause of action accrued[.]"). Accordingly, BHC's claims for breaches of contract that occurred on or around May 1, 2019, and March 1, 2020, respectively, are not time-barred under the 10-year statute of limitations prescribed by Illinois law.

2.    **BHC states a valid claim for breach of contract**

Defendants next argue that BHC's claim for breach of contract should be dismissed because it was not pleaded with "sufficient details" to satisfy the Rule 12(b)(6) plausibility standard. Applying Illinois law (as indeed the Court must, per the express terms of both loan agreements), BHC's claim for breach of contract must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant;

and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019).

The Complaint clearly satisfies each element of BHC's claim for breach of contract under Illinois law. Specifically, the Complaint alleges the existence of two fully executed loan agreements between Defendants and BHC; alleges and provides evidence that Garcia personally guaranteed both loans; alleges that BHC performed its duties under the agreements by, *inter alia*, remitting the requested funds; alleges that Defendants defaulted under (*i.e.*, breached) both loan agreements; that Garcia refused to comply with her personal obligations under the guaranties; and alleges that such breaches damaged BHC in an amount exceeding $5,600,000. BHC's claim for breach of contract is more than adequately pleaded to survive a Rule 12(b)(6) challenge.

Defendants also assert that BHC failed to plead the requisite conditions precedent to sustain its contract claims. Conditions precedent, however, are not favored by Illinois courts applying Illinois law, which controls in this case. *A.A. Conte v. Campbell-Lowrie-Lautermilch*, 132 Ill. App.3d 325, 87 Ill. Dec. 429, 432, 477 N.E.2d 30, 33 (1985); *accord Shackleton v. Food Mach. & Chem. Corp*., 166 F. Supp. 636 (D.C. Ill. 1958), *aff'd in part, rev'd in part*, 279 F.2d 919 (7th Cir.1960); *Department of Pub. Works and Bldgs. v. Porter*, 327 Ill. 28, 158 N.E. 366 (1927); 12A Ill. L. & Prac. Contracts § 227 (1983). Where the written terms of a contract are plain and unambiguous, the language of the instrument affords the sole criterion of the parties' intentions. *Althoff Ind., Inc. v. Elgin Med. Ctr., Inc*., 95 Ill.App.3d 517, 520, 51 Ill. Dec. 386, 389, 420 N.E.2d 800, 803 (1981). Defendants' assertion that BHC failed to sufficiently plead conditions precedent fails under controlling Illinois law.

### 3.    BHC states a valid claim for unjust enrichment

Defendants next argue, correctly, that where there is a valid contract, there can be no

13

recovery under a claim of unjust enrichment. This is true regardless of whether Texas or Illinois law is applied. *See, e.g.*, *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000); *Nesby v. Country Mut. Ins., Co.,* 346 Ill. App. 3d 564, 567, 281 Ill. Dec. 873, 805 N.E.2d 241, 243 (2004). However, at the pleading stage, "a party may plead claims in the alternative," including an unjust enrichment claim as an alternative to a breach of contract claim. *Guinn v. Hoskins Chevrolet,* 361 Ill. App. 3d 575, 604, 296 Ill. Dec. 930, 836 N.E.2d 681, 704 (2005).

In this matter, BHC asserts that the MLSAs for each loan provide the controlling terms for each loan. (Compl. ¶ 10.) Defendants, however, deny this allegation in paragraph 69 of their motion to dismiss/answer. Because Defendants have denied (albeit baselessly) that a valid contract exists, BHC's alternative claim for unjust enrichment is entirely proper.

### 4.     BHC states a valid claim for guaranty

The Complaint plainly asserts that Garcia guaranteed the loan agreements and attaches copies of the subject guaranties to the Complaint as Ex. C (Doc. No. 1-1, pp. 29-36.) Having already alleged that there were contracts between the parties that were breached, the guaranties simply confirm Garcia's personal obligation. BHC has stated a valid claim for relief under the guaranties.

### 5.     BHC states a valid claim for specific performance

Defendants seek dismissal of BHCs' specific performance claim, asserting that there has been no proper demand for any such performance. At the pleading stage, however, "a plaintiff need not allege in express terms that [it] does not have an adequate legal remedy so long as the facts brought out in the pleadings show such to be the case." *Stemmons Enter., L.L.C. v. Fisker, Inc.,* No. 4:22-CV-01487, 2023 WL 2652251, at *2 (S.D. Tex. Mar. 27, 2023), *report and recommendation adopted,* No. 4:22-CV-01487, 2023 WL 3261760 (S.D. Tex. May 3, 2023).

14

To state a cause of action for specific performance under Illinois law, a plaintiff must allege the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract or proof that the plaintiff was ready, willing, and able to perform the terms of the contract; and (3) the failure or refusal of the defendant to perform its part of the contract. *Lobo IV, LLC v. V Land Chicago Canal, LLC,* 2019 IL App (1st) 170955, ¶ 64, 435 Ill. Dec. 210, 138 N.E.3d 824.

Again, BHC has clearly alleged the existence of two valid, binding, and enforceable loan agreements between itself and Defendants;  that BHC provided the requested funds to Defendants; and that Defendants subsequently breached the terms of both loan agreements. For example, BHC specifically alleges that the MLSAs require Defendants to provide financial information to BHC that will assist BHC in recouping its loans, including tax returns. As alleged in the Complaint, GLG's failure to provide its tax returns constitutes an event of default under the express terms of the loan agreement. BHC has adequately pleaded its claim for specific performance.

### 6.     BHC states a valid claim for declaratory relief

Defendants assert that BHC's declaratory judgment claim is redundant and therefore fails. Under Illinois law, a declaratory judgment allows the court, "in cases of actual controversy, [to] make binding declarations of rights, having the force of final judgments." 735 ILCS 5/2-701(a). The elements of a declaratory judgment action are "(1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Adkins Energy, LLC v. Delta-T Corp.,* 347 Ill. App. 3d 373, 376, 282 Ill. Dec. 685, 806 N.E.2d 1273 (2004). The same elements apply to declaratory judgment actions in the Fifth Circuit. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007).

BHC's Complaint satisfies all three elements of its claim for declaratory relief.

OM 1965319.1

Specifically, BHC has alleged "a tangible, legal interest" in enforcing the MLSAs and guaranties; Defendants obviously oppose BHC's demand for repayment and continue to refuse to pay amounts owed; therefore, an "actual controversy" presently exists between BHC and Defendants. BHC has adequately pleaded its claim for declaratory relief.

### E.    This Matter Should Not Be Stayed Pending Resolution of the State Court Lawsuit

As an alternative to their request for dismissal, Defendants assert that this matter should be stayed pending resolution of the 2016 State Court Lawsuit, wherein the only remaining issue relates to the disposition of certain attorney fees held by WVM, as explained in detail *supra* herein. Defendants' reliance upon the *Colorado River* abstention doctrine to support their request for a stay is misplaced.

Once a federal court determines that jurisdiction has been conferred over a matter, it generally cannot abstain from exercising that jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 358 (1989). However, in "extraordinary and narrow" circumstances, a district court "may decline to exercise or postpone the exercise of its jurisdiction." *Allegheny Cnty. v. Frank Mashuda Co.,* 360 U.S. 185, 188-89 (1959). Such circumstances include cases where "federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests," *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 237-38 (1984) (*Younger* abstention), or when "there are pending parallel proceedings in federal and state court **involving the same parties and issues**." *Nationstar Mortg. LLC v. Knox,* 351 F. App'x 844, 851 (5th Cir. 2009) (*Colorado River* abstention) (emphasis added).

It has been held that:

[B]efore *Colorado River* abstention may be considered, the Court did explain in *Moses H. Cone Memorial Hospital* that "the decision to invoke *Colorado River*

16

necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 28. **Some courts have read the "parallelism" requirement to mean that the state litigation must involve the same parties and issues and that it will completely and finally resolve the issues between the parties**. *See, e.g.*, *Michelson v. Citicorp Nat'l Servs., Inc.*, 138 F.3d 508, 515 (3d Cir. 1998) (quoting *Marcus v. Township of Abington*, 38 F.3d 1367, 1371 (3d Cir.1994)); *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997). Clearly, the fact that "a pending state court action involv[es] the same subject matter" is not enough. *See Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995) ("**This obligation [to exercise jurisdiction] does not evaporate simply because there is a pending state court action involving the same subject matter.**"). However, other courts have also observed that "we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1984) (emphasis added); *see also McLaughlin v. United Virginia Bank*, 955 F.2d 930, 935 ("'Suits are parallel if substantially the **same parties litigate substantially the same issues** in different forums.'") (quoting *New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991), *cert. denied*, 503 U.S. 971 (1992)) (emphasis added); *Jackson Hewitt, Inc. v. J2 Financial Servs., Inc.*, 901 F. Supp. 1061, 1066 (E.D. Va. 1995) (quoting *Lumen* ). "Substantial likelihood" that the state litigation will dispose of all claims presented in the federal case, as the result of the "substantial" identity of parties and issues, as the measure of "parallelism," is borne out by the Supreme Court's observation in *Moses H. Cone Memorial Hospital* that, "assuming that for some unexpected reason the state forum does turn out to be inadequate in some respect ... [a party] could seek to return to federal court if it proved necessary," despite a stay or dismissal pursuant to *Colorado River*, adding that "[i]t is highly questionable whether this Court would have approved a dismissal of a federal suit in *Colorado River* (or in any of the abstention cases [cited] ) if the federal courts did not remain open to a dismissed plaintiff who later demonstrated the inadequacy of the state forum." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 28. Thus, the state and federal actions need not be "mirror images." *Jackson Hewitt, Inc.*, 901 F. Supp. at 1066.

*Behring v. Thermogas Co. of Storm Lake*, No. C 00-4038-MWB, 2000 WL 34031797, at*2-3

(N.D. Iowa Aug. 21, 2000) (emphasis added). In other words, *Colorado River* cannot be invoked

merely because a state-court action concerns the same subject matter as a federal lawsuit; rather,

the actions must be so "parallel" in nature that resolution of the state litigation will dispose of all

claims presented in the federal case. A finding of "parallelism" is therefore required before the

doctrine can be applied. *See Stonewater Adolescent Recovery Ctr. v. Lafayette Cnty., Mississippi*,

OM 1965319.1

No. 3:19-CV-00231, 2020 WL 1817302, at *3 (N.D. Miss. Apr. 9, 2020) ("A parallel proceeding exists if there is a 'substantial similarity' between the state and federal proceedings, which occurs when there are similar parties and 'a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court.") (citation omitted).

As BHC has painstakingly explained elsewhere in this response, the State Court Lawsuit and this action have little in common, and are certainly not "parallel" for purposes of *Colorado River* abstention. Indeed, while the State Court Lawsuit will determine whether WVM (a non-party to this action) is required to forward certain attorney fees to GLG or to BHC, such finding has no bearing whatsoever on the existence, validity, or amount of the debt owed by GLG and Garcia to BHC under the 2017 and 2018 MLSAs. Stated differently, a ruling on the 2016-initiated litigation and fee dispute would not be probative – much less *determinative* – on the issue of Defendants' remaining obligation to BHC.[13]  The Court should give great consideration to the admonition that a stay, or abstention, should only be granted if "exceptional" circumstances so dictate.  *Black Sea Inv., Ltd. v. United Heritage Corp*., 204 F.3d 647, 650 (5th Cir. 2000). Here, Defendants' race to equate the State Court Lawsuit with the instant federal case is anything but exceptional and does not warrant a stay under the *Colorado River* abstention doctrine.

Even if the two cases were parallel (they are not), *Colorado River* still does not apply absent "exceptional circumstances" sufficient to justify abstention. To determine whether exceptional circumstances exist, courts consider a number of factors including: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in

---

[13] Again, it should be noted that Garcia was only added as a party to the State Court Lawsuit *after* this matter was filed, in an apparent effort to bolster Defendants' straw-grasping claim that the cases are parallel.

protecting the rights of the party invoking federal jurisdiction. *Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 395 (5th Cir. 2006).

Considering the factors relevant to the matter at hand, it is clear that no "exceptional circumstances" exist sufficient to warrant abstention. As a threshold matter, the cases are not parallel, so the doctrine does not apply. But even if it did, there is no compelling reason for this Court to cede its jurisdiction over BHC's contract claims, as there can be no serious argument that this forum is inconvenient for the parties, or that resolution of BHC's contract claims will result in "piecemeal" litigation of the State Court Lawsuit concerning entitlement to attorneys' fees. Moreover, the fact that the state court may have assumed control over a res (to the extent the disputed fees have been or will be deposited with that court), such circumstance has no bearing on BHC's claims in *this matter*, which relate to funds owed by Defendants *regardless of whether such funds are paid, in part, by WVM upon resolution of the State Court Lawsuit*. There are no exceptional circumstances sufficient to justify abstention here.

Thus, because the State Court Lawsuit is not "parallel" to the case at bar, this Court should decline to abstain from adjudicating this matter under the *Colorado River* doctrine.

### F.    The State Court's Purported Finding of "Dominant Jurisdiction" Does Not Bind this Court, Which has Inherent Authority to Control its Docket

Finally, Defendants suggest that this Court should defer to the Hidalgo County District Court's finding of "dominant jurisdiction" over Defendants' purported loan-related crossclaims against BHC. (Doc. 38 at p. 2.) However, the state court's finding of "dominant jurisdiction" does not bind this Court, which has inherent authority to control its own docket. *See Thompson v. Phillips 66 Co.*, No. CV H-23-1083, 2023 WL 7414567, at *3 (S.D. Tex. Nov. 9, 2023) ("[Dominant jurisdiction] is a doctrine usually cited in horizontal jurisdiction issues arising in state courts, **not in vertical jurisdiction issues between state and federal courts**.") (emphasis added);

*Ekholm v. T.D. Ameritrade, Inc.*, No. 3:13-CV-0142, 2013 WL 4223128, at *3 n.5 (N.D. Tex. Aug. 14, 2013) ("[W]hen suits are filed in federal court and state court, dominant jurisdiction does not apply."). Accordingly, this Court is not bound by the state court's finding of "dominant jurisdiction" over this dispute.

## IV.    CONCLUSION

For the foregoing reasons, BHC respectfully requests that the Court deny Defendants' motion to dismiss or stay this action in its entirety. To the extent the Court grants any portion of Defendants' motion to dismiss, it should do so without prejudice to allow BHC to cure any perceived defects in its pleadings.

Respectfully submitted,

**SPENCER FANE, LLP**

/s/ *Joseph A. Garnett*
JOSEPH A. GARNETT
TX Bar No. 07680600
Fed. No. 8307
Seong J. Hong
3040 Post Oak Blvd., Suite 1400
Houston, Texas 77056
Telephone:(713) 552-1234
Facsimile:    (713) 963-0859
E-mail: jgarnett@spencerfane.com

**COUNSEL FOR PLAINTIFF**

20

## **CERTIFICATE OF SERVICE**

I certify that on July 7, 2025, a true and correct copy of the foregoing document was served on the parties registered to receive notice by electronic service via the Court's ECF filing system.

//s/ *Joseph A. Garnett*
JOSEPH A. GARNETT

OM 1965319.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **BROOK-HOLLOW CAPITAL, LLC** | § | |
| *Plaintiff*, | § | |
| | § | |
| **vs.** | § | **24-CV-00466** |
| | § | |
| **GARCIA LAW GROUP, PLLC AND** | § | |
| **MARIA L. GARCIA,** | § | |
| *Defendants*. | § | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

On _____, 2025, the court considered Defendants' Motion To Dismiss For Lack

Of Capacity; Motion To Dismiss For Forum Non Conveniens; Motion To Dismiss For Lack Of

Subject-Matter Jurisdiction; Motion To Dismiss For Failure To State A Claim; Alternative Motion

To Stay Action Or Abstain In Favor Of Pending State Action; Memoranda In Support Of Each Of

The Foregoing, And Subject To The Foregoing Motions, Verified Original Answer And Counter-

Claim.

The court is of the opinion that the motion should be **DENIED**.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is DENIED and this

case shall remain on thise Court's docket.

SIGNED and ENTERED on _____, 2025.

_____
Presiding Judge

OM 1965319.1