United States District Court
Southern District of Texas
**ENTERED**
February 20, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| BROOK-HOLLOW CAPITAL, LLC, § § Plaintiff, § § VS. § GARCIA LAW GROUP, PLLC AND § MARIA L. GARCIA § § Defendants. § | CIVIL ACTION NO. 7:24-CV-466 |

## OPINION AND ORDER

Plaintiff Brook-Hollow Capital, LLC ("BHC"), a financial services company that makes loans to contingent-fee lawyers, alleges breach of contract and related claims against Defendants Garcia Law Group, PLLC ("GLG") and Maria Garcia.

Defendants seek dismissal of all causes of action based on Federal Rule of Civil Procedure 12(b)(6). (Motion, Doc. 38)  They also request that the Court stay or abstain from asserting jurisdiction due to an ongoing state court case which also involves these parties, among others.

Based on the record and the applicable law, the Court concludes that Defendants fail to demonstrate that BHC's claims should be dismissed at this stage of the proceedings.

## I.   Factual Allegations and Procedural History

The factual context required to resolve the pending Motion stems back to 2015 and a tragic plane crash in McAllen, Texas, that killed all three occupants.  In 2016, representatives of the victims initiated an action against the airplane manufacturer and parts suppliers. *See Garcia et al. v. Lycoming Engines, et al.*, No. C-2917-16-B (Tex. Dist. Ct. 2016) ("State Court Case").  In that litigation, which remains ongoing, GLG and the law firm of Webster Vicnair MacLeod ("Webster") have represented the plaintiffs based on a contingency-fee agreement.

BHC is a limited liability company that makes "loans to lawyers, particularly contingent fee lawyers involved in personal injury, mass tort, and class action litigation." (Compl., Doc. 1, ¶ 3)

In February 2017, and unrelated to the State Court Case, BHC and GLG entered into a $1,000,000 Master Loan and Security Agreement ("2017 MLSA") with a 15% interest rate. (2017 MLSA, Doc. 1–1, 2-12) The agreement called for interest and principal to be due on February 28, 2020. Garcia signed the 2017 MSLA on behalf of GLG, and also as an individual guarantor. (*Id.* at 11)

In December 2018, BHC and GLG entered into a $2,224,651,97 Master Loan Security Agreement ("2018 MLSA") with a 4% interest rate. (2018 MLSA, Doc. 1–1, 14-27) The contract called for periodic payments to be made through 2038, when all outstanding principal and interest would be due. Garcia signed the 2018 MLSA on behalf of GLG, and also as an individual guarantor. (*Id.* at 25)

BHC alleges that in May 2019, GLG defaulted on the 2018 MLSA, and then defaulted on the 2017 MLSA in March 2020. According to BHC, the MLSAs granted the company the right to "demand immediate payment in full of all Borrower Obligations, in principal, interest, fees, costs, expenses, and other charges." (*Id.* at 22; 2017 MLSA, Doc. 1–1, 8) Upon the alleged defaults, BHC "made significant efforts to obtain payment from Defendants, including extensive communications with counsel for Defendants." (Compl., Doc. 1, ¶ 25)

In 2023, the parties to the State Court Case reached a settlement. Webster received all attorney's fees stemming from the settlement into its IOLTA account.

A dispute then arose regarding those attorney's fees. GLG initially directed that its share of the attorney's fees be paid to BHC in partial satisfaction of the amounts owed under the MLSAs, leading "to de facto forbearance on the part of BHC." (*Id.* at ¶ 24) But after issuing this directive, "Garcia reneged on the DTP by affirmatively acting to frustrate [it]." (*Id.*)

In December 2023, Webster initiated an interpleader claim within the State Court Case, naming GLG, Garcia, and BHC as defendants-in-interpleader to resolve the uncertainty over ownership of the attorney's fees. Later, Webster alleged its own interest in those fees.

On November 6, 2024, GLG filed a general denial to the interpleader action, as well as a crossclaim against BHC alleging fraudulent misrepresentation in connection with the MLSAs.

2 / 20

Two days after GLG's crossclaim in the State Court Case, BHC initiated this lawsuit, naming GLG and Garcia as Defendants. BHC alleges causes of action for breach of contract and unjust enrichment against GLG, and a claim for Guaranty Liability against Garcia. In addition, BHC seeks specific performance in the form of an "order . . . directing Defendants to provide unfettered access to [ ] Financial Information" that the MLSAs specify, and a declaratory judgment that "the accounts receivable and other rights to payment of GLG are subject to the security interest of BHC and may be collected by BHC, without the consent of GLG." (Compl., Doc. 1, ¶ 46)[1] In connection with its breach of contract claim, BHC relies on the acceleration clause in the contracts, seeking payment of the principal and outstanding interest, amounting to $3,340,452.07 in connection with the 2018 MLSA and $2,289,301.37 in connection with the 2017 MLSA.

In June 2025, GLG and Garcia filed their Motion to Dismiss (Doc. 38), as well as a counterclaim alleging that BHC fraudulently induced GLG and Garcia into the MLSAs.[2] (Motion & Counter-Claim, Doc. 38, 30–32) Defendants move for dismissal under Rule 12(b)(6) and alternatively request that the Court stay or abstain from exercising jurisdiction in the matter due to the ongoing State Court Case.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges a court's jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). When evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone;

---

[1] Although the Complaint does not render it clear, BHC appears to request a declaratory judgment under the Illinois Declaratory Judgment Act, rather than the Federal Declaratory Judgment Act.
[2] Also in June 2025, BHC removed the State Court Case to federal court. (*See Brook-Hollow, LLC v. Webster Vicknair Macleod, et al.*, 7:25-cv-325, Southern District of Texas–McAllen Division) On October 22, the Court granted a motion and remanded the matter to state court.

(2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). In connection with a jurisdictional challenge, a court can also take judicial notice of relevant records in other court proceedings. *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x. 351, 352 (5th Cir. 2007) (per curiam) (unpublished).

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept as true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (citation omitted). "However, [courts] do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 336 (citation and quotation marks omitted). To survive, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court does not presume the truth of statements that are "mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (quoting *Ashcroft*, 556 U.S. at 678). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.* 550 U.S. at 555.

## III. Analysis

BHC alleges causes of action for breach of contract and unjust enrichment against GLG, and a claim for Guaranty Liability against Garcia. In addition, BHC seeks specific performance in the form of an "order . . . directing Defendants to provide unfettered access to the Financial Information" and a declaratory judgment that "the accounts receivable and other rights to payment of GLG are subject to the security interest of BHC and may be collected by BHC, without the consent of GLG." (Compl., Doc. 1, ¶ 46)

Defendants first contend that this Court lacks subject matter jurisdiction under the *Brillhart* or *Colorado River* abstention doctrines.[3] Defendants also seek to dismiss the Complaint on the grounds that BHC lacks capacity to initiate its lawsuit, that this Court presents an inconvenient forum, that the statute of limitations bars BHC's claims, and that BHC fails to state a claim upon which relief can be granted.

The Court will address each ground in turn.

## A. Abstention or Lack of Subject Matter Jurisdiction

Relying upon the *Brillhart* and *Colorado River* doctrines, Defendants request that the Court abstain from exercising jurisdiction due to the ongoing State Court Case. They argue that in both cases, Defendants contest the validity of the MLSAs based on fraudulent inducement, and that the resolution of that claim necessarily determines the validity of the contracts. Thus, according to Defendants, permitting both cases to proceed simultaneously risks inconsistent judgments and unnecessarily taxes judicial resources.

Under the *Brillhart* doctrine, a federal "district court may decline to decide a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 392 (5th Cir. 2003) (citing *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 495 (1942)). The *Brillhart* doctrine seeks to promote the purposes of the Federal Declaratory Judgment Act, which "confers a discretion upon the courts rather than an absolute right upon the litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

The *Colorado River* doctrine also permits a federal court to decline jurisdiction based on a related state court proceeding. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The doctrine aim to promote "considerations of wise judicial

---

[3] Defendants also advance arguments under the Anti-Injunction Act alongside their federal-state comity arguments based on the *Brillhart* and *Colorado River* doctrines. (Mot. to Dismiss, Doc. 38, 11–13) But these are arguments are inapplicable, as BHC does not request injunctive relief under the Federal Declaratory Judgment Act or other federal statute.

administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (internal quotations marks omitted). Still, federal courts exercise abstention under *Colorado River* only in "extraordinary" circumstances. *Colorado River Water Conservation Dist.*, 424 U.S. at 813. As a general rule, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction" because "federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 15.

As a threshold matter, the Court determines whether to apply the *Brillhart* or *Colorado River* framework. This question turns on the nature of the alleged claims. When a plaintiff advances claims for both coercive relief and a declaratory judgment, a district court must apply *Colorado River*. *See New England Ins. Co. v. Barnett*, 561 F.3d 392, 395 (5th Cir. 2009). Coercive relief includes claims for monetary damages. *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994). Thus, when a lawsuit includes non-frivolous claims for monetary damages, a court should apply the *Colorado River* analysis. *New England Ins. Co.*, 561 F.3d at 396.

In the present case, BHC asserts claims for monetary damages—a coercive remedy—alongside a request for declaratory relief. As BHC requests coercive relief, the Court applies the *Colorado River* doctrine to Defendants' request for abstention.

1. ***Colorado River* Framework**

Courts apply a two-step test when determining whether to abstain under *Colorado River*. First, the state court proceeding must be "parallel" to the federal lawsuit. *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000). Absent a finding of parallelism, the court may not abstain under this doctrine. *See Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990). If the two lawsuits are parallel, then the court

applies a six-factor balancing test. *See Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 798 (5th Cir. 2014)

### 2. Parallelism

For purposes of *Colorado River*, parallel actions are cases involving the same parties and the same issues. *Id.* at 797. Proceedings are parallel when the state court action will "necessarily dispose" of all claims in the federal action. *Id.* at 798. For example, the Fifth Circuit affirmed a finding of parallel lawsuits when the state and federal actions both concerned the ownership of the same property and involved the same parties. *Id.* (noting that an eviction action in state court necessarily required determination of the property's ownership, which was also a central issue to the plaintiff's claim to priority title in the federal lawsuit).

The existence of some common issues and the same subject matter does not suffice. *See RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987). In *RepublicBank*, the Fifth Circuit affirmed the district court's decision not to abstain under *Colorado River* because the two proceedings were not parallel. There, the state and federal proceedings shared the "general subject matter[,]" including the validity of the same promissory note. *Id.* Each lawsuit, however, also involved unique claims. The state action alone included a claim regarding the enforceability of the mortgage tied to the promissory note, and only the federal action included a claim regarding a guarantor agreement. In addition, the parties in the two lawsuits overlapped, but not completely. As the two actions did not involve the same parties and issues, the Fifth Circuit affirmed that the proceedings were not parallel, emphasizing that it was "not a close question[.]" *Id.*

In addition, actions that involve independent wrongs do not represent parallel lawsuits. *See Hartford Acc. & Indem. Co.*, 903 F.2d at 360. In *Hartford*, an injured employee sued his employer in state court, and the employer sued the tortfeasor in federal court to facilitate recovery of workers compensation. Given the distinction in the alleged wrongs, and despite both cases

involving "the same underlying episode and entail[ing] significant overlapping proof," the circuit court affirmed the conclusion that the actions were not parallel. *Id.*

Applying these principles to the current matter, the Court concludes that BHC's action in this Court is not parallel to the State Court Case. While BHC, GLG, and Garcia are also parties in the State Court Case, that matter also involves other parties, such as Webster. And the two lawsuits concern critically distinct issues. In the State Court Case, BHC may assert a right to some of the interpleaded funds based on the Direction to Pay Letter. But that document and its validity play no role in the lawsuit before this Court. And while GLG alleges a fraudulent misrepresentation claim against BHC in the State Court Case—as it does in the present lawsuit— the state court may not reach that issue to resolve the priority interests in the interpleaded monies. For example, the state court may conclude that irrespective of the MLSAs and the Direction to Pay Letter, Webster or another party has a priority interest to the entirety of the interpleaded funds, rendering resolution of the fraudulent misrepresentation claim unnecessary.

Further, the two actions do not concern the same property. The State Court Case involves competing interests in the interpleaded attorney's fees, which play no role in the matter before this Court. From BHC's perspective, its entitlement to breach of contract damages based on the MLSAs rises or falls independent of any party's interest in the interpleaded monies in the State Court Case.

GLG focuses on the fact that it asserts a fraudulent inducement claim against BHC in both cases. But the state court may not reach that issue, minimizing the importance of this common thread. The fact that both cases involve some common issues does not suffice to render the actions parallel for purposes of *Colorado River*.

### 3. *Colorado River* Factors

Having concluded that this lawsuit is not parallel to the State Court Case, the Court need not analyze the relevant factors under *Colorado River*. But doing so reveals that even if parallelism existed, the Court would nevertheless decline to abstain.

A court applies six factors to determine whether to abstain from exercising jurisdiction over a matter. The court weighs the factors to ascertain whether "exceptional circumstances" exist to abstain. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19–26. Federal courts apply a "heavy bias" toward exercising jurisdiction.[4] *Southwind Aviation, Inc*, 23 F.3d at 951. With these principles in mind, the Court considers the six factors, as set forth in *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788 (5th Cir. 2014).

### a. Assumption by either court of jurisdiction over the res

This factor considers whether the two actions involve disputes over the same property, or res. "[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River Water Conservation Dist.*, 424 U.S. at 817.

Here, the lawsuit pending before this Court does not implicate the same property as the State Court Case, which in relevant part concerns interpleaded attorney's fees. Only the state court has jurisdiction over those attorney's fees. Thus, this factor weighs against abstention.

### b. Relative inconvenience of the forums

Under this factor, courts ask "whether the inconvenience of the federal forum is so great that abstention is warranted." *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 498 (5th Cir. 2002) (citing *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir.1988)). "[T]his factor primarily involves the physical proximity of each forum to the evidence and witnesses." *Afr. Methodist Episcopal Church*, 756 F.3d at 800 (*citing Evanston Ins. Co.*, 844 F.2d at 1191). If a state court is "merely a more convenient" forum than a federal court, this factor is not satisfied. *Kelly Inv., Inc.*, 315 F.3d at 498. In *Colorado River* itself, the court considered a 300-mile difference in driving distance between the state and federal fora to be "significant," especially because the case involved more than one thousand defendants. *Colorado River Water*

---

[4] As evidence of the heavy burden that a movant faces when seeking abstention, one analysis, albeit dated, concluded that the Fifth Circuit reversed application of *Colorado River* abstention in 90% of the appealed cases. *See* Josue Caballero, *Colorado River* Abstention Doctrine in the Fifth Circuit: The Exceptional Circumstances of a Likely Reversal, 64 BAYLOR L. REV. 277, 288 (2012).

*Conservation Dist.*, 424 U.S. at 820.  In contrast, in another matter, a 30-minute differential in driving distance rendered the federal forum "only slightly less convenient" than the state forum. *Afr. Methodist Episcopal Church*, 756 F.3d at 800.

Here, the state court located in the Hidalgo County Courthouse in Edinburg, Texas, sits about 20 minutes from the federal courthouse in McAllen, Texas, where this Court presides.  The parties do not present information enabling the Court to determine whether one courthouse represents a more convenient location to the parties or witnesses.  Given the relatively-close locations of the courthouses, the Court considers it highly unlikely that either location would present a material advantage to one side.  As a result, this factor is neutral as it concerns abstention.

### c. Avoidance of piecemeal litigation

"The real concern at the heart of the third Colorado River factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." *Black Sea Inv., Ltd.*, 204 F.3d at 650–51.  "The prevention of duplicative litigation is not a factor to be considered in an abstention determination." *Id.* at 650; *see also Afr. Methodist Episcopal Church*, 756 F.3d at 800.

Here, the possibility exists that the state court could reach Defendants' claim that BHC fraudulently induced them into the MLSAs.  But Defendants have not demonstrated that the state court must necessarily reach that issue to resolve the ownership of the interpleaded attorney's fees.  As a result, and at best, this factor weighs only slightly in favor of abstention.

### d. The order in which jurisdiction was obtained by the concurrent forums

This factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.  In one case, even when a state court proceeding began two years prior to the federal proceeding, the court did not find that the factor weighed strongly toward abstention,

because one party had only recently been added and discovery had not yet begun. *Kelly Inv., Inc.*, 315 F.3d at 499.

Here, while the wrongful death suit underlying the State Court Case began in 2016, the issues regarding the interpleaded attorney's fees arose in December 2023. In addition, almost no progress occurred as to the interpleader claims through October 2025, due to the time required to serve BHC, and the removal and subsequent remand of the matter. The record contains no evidence that the parties in the State Court Case have exchanged discovery, engaged in motion practice, or otherwise moved that matter forward. As a result, this factor does not weigh in favor of abstention.

### e. The extent that federal law provides the rules of decisions on the merits; the adequacy of state proceedings in protecting the rights of the party invoking federal jurisdiction

The fifth and sixth *Colorado River* factors cannot weigh in favor of abstention, but can only be neutral or weigh against abstention. *Afr. Methodist Episcopal Church*, 756 F.3d at 801. When federal law governs the parties' claims, this factor weighs against abstention. *See Evanston Ins. Co.*, 844 F.2d at 1193. And a court must consider whether one party would suffer inadequate protection of its interests in state court. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26.

Here, federal law does not control in either action, as BHC filed this lawsuit based on diversity jurisdiction, and, as later explained, Illinois law governs the central claim for breach of contract. In addition, neither party presents a concern about the state court's ability to protect its interests. As a result, this factor is neutral.

Overall, only one factor weighs slightly toward abstention, and no other factor weighs in favor. Thus, even under the *Colorado River* factors, the Court would decline to abstain.[5]

---

[5] Similarly, the Court would not abstain under *Brillhart*. That doctrine applies where "another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Southwind Aviation, Inc.*, 23 F.3d at 950 (quoting *Brillhart*, 316 U.S. at 495). As explained, this lawsuit and the State Court Case overlap as to some parties and issues, but not as to all.

### B. Lack of Capacity to Sue

Defendants argue that BHC lacks the capacity to sue because it is not registered to do business in Texas. (Motion, Doc. 38, 3)

While challenging a party's capacity to sue or be sued is not a traditional Rule 12 motion, federal courts "have entertained certain pre-answer motions that are not expressly provided for by the rules or by statutes, such as motions raising a lack of capacity to sue or be sued." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed. 2004). Under Federal Rule of Civil Procedure 17(b)(3), "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Thus, the Court applies Texas law to determine if BHC possesses the capacity to bring this lawsuit.

A foreign entity seeking "to transact business" in Texas must register under Chapter 9 of the Texas Business Organization Code. TEX. BUS. ORG. CODE § 9.001(a). And unless registered, a foreign filing entity "may not maintain an action, suit, or proceeding in a court of [Texas] . . . on a cause of action that arises out of the transaction of business in [Texas.]" *Id*. at § 9.051(a)(2). But the statute expressly provides that "securing or collecting debt" and "interstate commerce" do not "constitute transaction of business in this state." *Id*. at § 9.251(b)(1), (8), (9).

With respect to the interstate commerce exception, courts "examine the transaction at the core of the suit, i.e., the transaction from which the suit arises." *Anglo-Dutch Petroleum Intern., Inc. v. Case Funding Network, LP*, 441 S.W.3d 612, 625 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The analysis focuses on "whether the transaction occurred entirely within one state." *Id*. (internal quotation marks omitted). In *Anglo Duch Petroleum*, a Nevada corporation sued a Texas-based company based on a litigation-financing agreement that "funded a lawsuit in Texas." *Id*. As the communications between the transacting parties and movement of funds crossed state lines, the court found that the transaction represented interstate commerce, triggering the Section 9.251(b)(9) exception and allowing the Nevada corporation to bring suit in Texas. Notably, the

court placed the burden on the party seeking abatement to show that the transaction underlying the claims constituted intrastate commerce. *Id.* at 621.

Here, BHC is a Delaware limited liability company with its principal place of business in Florida and with members in various states. While BHC alleges claims under MLSAs that provided loans to a Texas law firm, Defendants present no evidence that the communications regarding the MLSAs and the flow of monies under those contracts all occurred within Texas. As a result, Defendants have not demonstrated that the MLSAs constitute intrastate commerce. And the allegations allow the reasonable inference that communications regarding the MLSAs and performance of the transaction crossed state lines, rendering it interstate commerce. As a result, BHC has the capacity to bring and maintain this suit under Chapter 9.

In support of their argument, Defendants rely upon two inapposite cases. (*See* Motion Doc. 38, 3–4 (citing *Spearwood Trust v. JPMorgan Chase Bank, N.A.*, No. 12-CV-1074-FB, 2013 WL 12393978 (W.D. Tex. 2013) and *DHI Holdings, LP v. Deutsche Bank Nat'l Trust Co.*, No. H-24-1270, 2024 WL 3585674 (S.D. Tex. 2024))) In *Spearwood*, the district court determined that a trust lacked the capacity to sue under Rule 17(b)(3). But the decision turned on the determination that only a trustee, not a trust, can sue under Texas law. And *DHI Holdings* concerned a limited partnership's capacity to sue, based on a statute specifically governing partnerships. Here, BHC is not a partnership, negating the relevance of *DHI Holdings*.

As BHC bases this lawsuit on a transaction involving interstate commerce, it need not register in Texas under Chapter 9 to initiate or maintain this action.

### C. Forum Non Conveniens

Defendants urge the dismissal of this lawsuit on the grounds that the State Court Case represents an adequate alternative forum in which the parties can resolve their dispute. Based on the relevant factors, the Court disagrees.

Courts generally give weight to the plaintiff's chosen forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 268 (1981). But "[f]inding that trial in the plaintiff's chosen forum

would be burdensome . . . is sufficient to support dismissal on grounds of forum non conveniens." *Id.* Under that doctrine, "when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)); *Piper Aircraft Co.*, 454 U.S. at 241. The factors that a court considers for the analysis include: ease of access to evidence, availability of witnesses, and other practical problems that would make trial expeditious and inexpensive; and the interest of the public in having local controversies decided close to home. *Am. Dredging Co.*, 510 U.S. at 448 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

Defendants' argument for the application of forum non conveniens tracks closely with their argument urging abstention. That is, Defendants argue that the court presiding over the State Court Case represents a superior tribunal to adjudicate the issues that BHC raises in this lawsuit, and that "[c]onsolidating the disputes in that forum will promote judicial economy and avoid the risk of inconsistent rulings." (Motion to Dismiss, Doc. 38, 5)

A review of the relevant factors, however, does not support the application of forum non conveniens. Defendants' preferred venue is a state court in Hidalgo County, in which this Court also lies, rendering the geographic factor neutral. The parties will presumably have equal access to evidence and witnesses in either venue. And both courts would draw any jury from the same pool of citizens. In addition, no significant administrative burden exists for this Court to adjudicate this lawsuit, as federal courts in Texas routinely apply Texas law when sitting in

diversity.[6]  Thus, litigating the dispute in a Texas state court has no advantage compared to presenting BHC's claims in this Court.

For these reasons, the Court concludes that Defendants have not demonstrated that the Court should dismiss the lawsuit based on forum non conveniens.

### D. Rule 12(b)(6) Motion

Defendants rely on Rule 12(b)(6) to challenge each of BHC's causes of action.  For the following reasons, the Court concludes that each claim survives the challenge.

#### 1. Breach of Contract

GLG seeks dismissal of this cause of action on the grounds that the statute of limitations bars the claim and that BHC fails to allege the essential elements of the cause of action.  Neither argument prevails.

##### a. Statute of Limitations

Relying on the four-year statute of limitations, GLG argues that as BHC alleges a default of the 2017 MLSA in 2020 and of the 2018 MLSA in 2019, but did not file its lawsuit until 2025, the claim is time barred.  In response, BHC does not contest this logic, but instead argues that based on the choice-of-law provision in the MLSAs, Illinois law governs, and that state prescribes a ten-year statute of limitations for breach of contract actions. (*See* Response, Doc. 43, 12 (citing 735 ILCS 5/13-206 ("[A]ctions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing and actions brought under the Illinois Wage Payment and Collection Act shall be commenced within 10 years next after the cause of action accrued[.]")))  Given the competing positions, the choice of law analysis proves dispositive.

"A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620 (5th Cir. 2014) (citing *Day &*

---

[6] And as this Court concludes that Illinois law governs as to the breach of contract claim, *see* Part II–D *infra*, neither venue has inherent expertise on the application of that state's laws, or the choice-of-law analysis itself.

*Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4–5 (1975) (per curiam)); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Texas, parties to a contract may choose the law applicable to their transaction if the chosen law bears a reasonable relationship to the contract. *Cook v. Frazier*, 765 S.W.2d 546, 549 (Tex. App.—Fort Worth 1989, no writ) (explaining that the transaction must have "significant contact" with the chosen state's law). Courts can disregard a choice-of-law provision when the alleged contacts between the chosen state and the transaction are not reasonably related or when the contacts themselves are contrived solely to substantiate the choice of law. *Woods–Tucker Leasing Corp. v. Hutcheson–Ingram*, 642 F.2d 744, 753 (5th Cir. 1981). Relevant contacts include a broad array of factors, including residence, business activity, and the initiation or origination of loans and associated payments. *See Woods-Tucker Leasing Corp. of Georgia*, 642 F.2d at 749 (finding that the home office and corporate headquarters, as well as the location from which loan monies were sent, represented reasonably sufficient contacts). The party challenging a choice-of-law provision must prove the clause's invalidity. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994).

In the present matter, BHC argues straightforwardly that the MLSAs contain an unambiguous choice-of-law provision: "Agreement and relationship of the parties is subject to, and is to be construed in accordance with the laws of the State of Illinois, regardless of the conflict of law rules of the state." (2017 MLSA, Doc. 1–1, 10; 2018 MLSA, Doc. 1–1, 23) And the MLSAs indicate that BHC's offices were located in Illinois when the parties signed the contracts. (*See* 2017 Certificate of Authority, Doc. 1–1, 12; *see also* Compl., Doc. 1, 2 n. 1 (alleging that "BHC formerly maintained an office at 161 N. Clark, Ste. 2925, Chicago, IL 60601"))

Neither Defendant responds to BHC's argument on this point. Instead, they base their Motion on Texas law without referencing the MLSA's choice-of-law provision. And in their Reply, they remain silent on the matter.

The Court recognizes that BHC presents limited argument showing how its allegations establish a reasonable relationship or significant contacts between the MLSAs and Illinois. But

in light of the fact that Defendants present no argument or evidence on the matter, the Court concludes that Defendants have not satisfied their burden to prove the invalidity of the choice-of-law provision. As a result, the Court applies Illinois's ten-year statute of limitations for the breach of contract claim, rendering the cause of action timely.

### b. Allegation of Required Elements

Defendants also challenge the breach of contract action by arguing that BHC's allegations "fail[ ] to provide sufficient details regarding Defendants' alleged breaches, including specific dates, payment attempts, or circumstances surrounding the purported defaults[,]" as well as BHC's satisfaction of all conditions precedent, "including proper notice of default and acceleration of the loans." (Motion, Doc. 38, ¶¶ 41–42) Aside from these general statements, Defendants offer little argument in either their Motion or Reply.

Illinois law contains four elements for a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs.*, LLC, 931 F.3d 610, 614 (7th Cir. 2019) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 286 Ill.Dec. 734, 814 N.E.2d 960, 967 (2004)). BHC's allegations address each of these elements. BHC attaches the MLSAs to its Complaint and alleges its own substantial performance under those contracts (*see, e.g.,* Compl., Doc. 1, ¶ 21 (including table listing outstanding debt owed to BHC)), alleges that Defendants defaulted through nonpayment on specific dates (*see id.* at ¶¶ 11, 13), and alleges specific damages (*see id.* at ¶ 27). As for the failure to plead conditions precedent, BHC correctly notes that Illinois law disfavors such conditions. *See, e.g.*, *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.*, 132 Ill. App. 3d 325, 329, 477 N.E.2d 30, 33 (1985) ("It is

17 / 20

true, as pointed out by [plaintiff], that conditions precedent are not generally favored[.]"). As a result, the Court concludes that BHC properly pleads a breach of contract claim against GLG.

### 2. Unjust Enrichment

Defendants assert that BHC's cause of action for unjust enrichment fails because "Texas law does not permit recovery under unjust enrichment when an express contract exists and controls the parties' relationship." (Motion, Doc. 38, 16)  BHC counters that while Defendants accurately state the law in Texas–and in Illinois–that at the pleading stage, parties can present alternate or inconsistent claims. *See* FED. R. CIV. P. 8(d); *see also Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 296 Ill. Dec. 930, 836 N.E.2d 681, 704 (2005) (permitting a party to allege an unjust enrichment claim alongside breach of contract); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 740 (Tex. 2005) (same).  BHC is correct.  At this stage of the proceedings, BHC need not elect between a claim for breach of contract and one for unjust enrichment.  Defendants are not entitled to dismissal of this claim.

### 3. Guaranty Liability

BHC alleges a claim for Guaranty Liability against Garcia, who signed the MLSAs as a guarantor.  In its Motion, Defendants summarily seek dismissal on the grounds that BHC does not attach the Guaranty Agreements to its Complaint and does not allege satisfaction of conditions precedent. (Motion, Doc. 38, ¶¶ 45–46)

The Court finds Defendants' arguments factually and legally incorrect.  BHC attached the guaranties to its Complaint, and adequately pleads a claim under those contracts under Illinois law. (*See* Guaranty for 2017 MLSA, Doc. 1–1, 36; Guaranty for 2018 MLSA, Doc. 1–1, 32)  Thus, this cause of action survives as well.

### 4. Specific Performance

Defendants argue that BHC may not seek specific performance because it possesses an adequate remedy at law and it has not alleged that Defendants have refused a proper demand for

any information. (Motion, Doc. 38, 16)

Under Illinois law, a cause of action for specific performance includes the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract or proof that the plaintiff was ready, willing, and able to perform the terms of the contract; and (3) the failure or refusal of the defendant to perform its part of the contract. *Lobo IV, LLC v. V Land Chicago Canal*, LLC, 2019 IL App (1st) 170955, 435 Ill. Dec. 210, 232, 138 N.E.3d 824 (2013).

BHC satisfies these elements. BHC alleges entitlement under the MLSA's to "unfettered access to [GLG's] Financial Information[.]" (Compl., Doc. 1, 8) And it references specific provisions within the MLSAs enumerating categories of information that GLG must provide BHC. In addition, BHC alleges compliance with the contractual terms and that Defendants have failed to provide the required financial information. Based on these allegations, the Court finds that BHC alleges a viable claim for specific performance under Illinois law.

### 5. Declaratory Judgment

Defendants also seek dismissal of BHC's declaratory judgment claim as redundant to its claim for breach of contract. (Motion, Doc. 38, 17)

BHC relies on Illinois law in defense of this cause of action. (*See* Response, Doc. 43, 15–16 (citing Illinois Declaratory Judgment Act, 735 ILCS 5/2–701 (West 2002)) As the claim seeks a declaratory judgment related to the MLSA's, the Court agrees that Illinois law governs.[7] Under that state's law, a claim for declaratory judgment includes the following elements: (1) a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between

---

[7] In support of their Motion, Defendants cite *American Eagle Insurance Company v. Thompson*, 85 F.3d 327 (8th Cir. 1996). Not only is that decision not binding on this Court, it concerns the Federal Declaratory Judgment Act and, as a result, is inapplicable to BHC's claim.

the parties concerning such interests. *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 376, 282 Ill. Dec. 685, 806 N.E.2d 1273 (2004).

Here, BHC properly alleges each element. The company alleges an interest in the outstanding value of the MLSAs, that Defendants oppose BHC's interest, and that the parties seek resolution of the issue through this litigation. As a result, BHC presents a viable claim for a declaratory judgment.

## IV.   Conclusion

For these reasons, it is:

**ORDERED** that Defendants' Motion to Dismiss for Lack of Capacity; Motion to Dismiss for Forum Non Conveniens; Motion to Dismiss for Lack of Subject-Matter Jurisdiction; Motion to Dismiss for Failure to State a Claim; Alternative Motion to Stay Action or Abstain in Favor of Pending State Action (Doc. 38) is **DENIED**.

Signed on February 20, 2026.

_____
Fernando Rodriguez, Jr.
United States District Judge